**Willie Clarence DALE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–01–00475–CR.**

Court of Appeals of Texas,
San Antonio.

Sept. 4, 2002.

Celeste Marie Ramirez, Attorney at Law, for Appellant.

Susan D. Reed, Criminal District Attorney, Kevin P. Yeary, Assistant Criminal District Attorney, Cadena-Reeves Justice Center, for Appellee.

Sitting: PHIL HARDBERGER, Chief Justice, ALMA L. LÓPEZ, Justice, SANDEE BRYAN MARION, Justice.

Opinion by: SANDEE BRYAN MARION, Justice.

A jury found defendant, Willie Clarence Dale, guilty of murder and assessed punishment at ten years' confinement. Defendant asserts the trial court erred by allowing the State to impeach him with evidence of his prior convictions, and in denying him a jury instruction on the lesser-included

offense of aggravated assault. The trial court did not err in its rulings, and we affirm the trial court's judgment.

## BACKGROUND

Defendant was charged, as a principal and a party, with the murder of Michael Johnson. Johnson died from a pulmonary embolus, following six weeks in a coma that resulted from multiple blunt force injuries to his face and head. The injuries, which were inflicted while he was at the home of Teresa Atkinson, were the result of being kicked repeatedly in the head by defendant and defendant's cousin, Carl Ross. On the night Johnson was beaten, defendant was at Teresa's house, along with Teresa's daughters, Carl Ross, and another man named Philip. Sometime after 2:00 a.m., Johnson arrived at Teresa's house.

The State's witnesses testified as follows. When Teresa told defendant that Johnson was on his way over to her house, defendant got mad and started to hit her. Defendant said, "Well, when Mike [Johnson] gets here, I'm going to drop you and him." One of Teresa's daughters heard defendant say, "When that . . . comes I'm going to whip his ass and Teresa's too." When Johnson arrived, defendant hit Johnson in the stomach with his fist. Johnson fell, and defendant started kicking him. Defendant asked Ross to "help" him, which Ross did by also kicking Johnson. After Ross started kicking Johnson, defendant started to hit Teresa, then he went back to kicking Johnson. When Ross and defendant heard the police sirens, they fled the house. The police captured defendant in his house, while he was hiding in a closet. The Emergency Medical Services technician found Johnson laying on his back in a "pool of blood."

The defendant took the stand in his own defense. He testified that when Johnson arrived at Teresa's house, Johnson put his hands up and said, "What's up, Will?" Defendant thought this meant Johnson wanted to fight with him. Defendant admitted that he hit Johnson first, in the face, and Johnson fell. Defendant said Ross then kicked Johnson. Johnson got up and sat on the couch, but when defendant tried to leave the house, Johnson got up and walked toward him. Defendant said he was scared, and he again hit Johnson. The two began to fight, and Ross joined the fight, kicking and hitting Johnson. Teresa walked over, and defendant hit her, while Ross continued to kick Johnson. After defendant got Teresa out of the way, he went back to fighting with Johnson. Defendant said Johnson started to fall back, holding onto defendant's shirt, pulling defendant down with him. Johnson landed on his back, with the defendant still hitting him. Defendant admitted Johnson did not fight back. Defendant then starting hitting Teresa again. As defendant started to leave the house, he kicked Johnson "a couple of times." He said he did not know that Johnson was hurt. When he realized the police were on their way, he ran to his nearby house. Defendant said he did not intend to cause Johnson serious bodily injury or his death, and he did not ask Ross to join the fight.

## DEFENDANT'S PRIOR CONVICTIONS

■ The trial court allowed the State to impeach defendant with evidence of his prior convictions for assault and cocaine possession. Defendant asserts the trial court erred in admitting this evidence because its prejudicial effect outweighed its probative value.

■ A defendant who testifies at trial places his credibility at issue and may be impeached and contradicted like any other testifying witness. *Alexander v.*

*State,* 740 S.W.2d 749, 763 (Tex.Crim.App. 1987). Generally, a defendant who testifies may be impeached by evidence of a prior conviction if the crime was a felony or involved moral turpitude and the court determines that the probative value of admitting the evidence outweighs its prejudicial effect. Tex.R. Evid. 609(a); *Theus v. State,* 845 S.W.2d 874, 879 (Tex.Crim. App.1992).

■ When determining whether the probative value of a defendant's previous conviction outweighs its prejudicial effect, the court examines: (1) the impeachment value of the prior crime; (2) the temporal proximity of the past crime relative to the charged offense and the witness's subsequent history; (3) the similarity between the past crime and the offense being prosecuted; (4) the importance of the defendant's testimony; and (5) the importance of the credibility issue. *Id.* at 880. When reviewing a trial court's decision to admit evidence of a defendant's previous conviction, we accord the trial court wide discretion and reverse only when the court's decision lies outside the zone of reasonable disagreement. *Id.* at 881. The proponent of the evidence has the burden to demonstrate the admissibility of the evidence. *Id.* at 880.

## Impeachment Value

■ Crimes that involve deception have a higher impeachment value than crimes involving violence, the latter having a higher potential for prejudice. *Id.* at 881. The State presented evidence of defendant's prior conviction for assault and cocaine possession. Neither assault nor possession of cocaine involve untruthfulness or deception, and are not ones that would ordinarily bear heavily against a witness's veracity. Thus, the first factor weighs against admissibility.

## Temporal Proximity

■ The second factor will favor admission if the past crime is recent and if the witness has demonstrated a "propensity for running afoul of the law." *Id.* at 881. The State did not present evidence of the dates of defendant's prior convictions, and the defendant did not object at trial to this omission. The Rules of Evidence provide a separate analysis standard if the conviction is more than ten years old. *See* Tex.R. Evid. 609(b). Such a conviction is not admissible "unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect." *Id.* The State must demonstrate that the probative value "substantially outweighs," not merely "outweighs," the prejudicial effect. *Jackson v. State,* 11 S.W.3d 336, 339 (Tex.App.-Houston [1st Dist.] 1999, pet. ref'd). In instances in which remoteness is an issue, we look exclusively to the strictures of Rule 609(b), not to the *Theus* factors. *Id.*

■ Because the defendant did not object to the lack of evidence as to when he was convicted of these prior crimes, we apply *Theus* to our analysis. The frequency of defendant's convictions demonstrate a propensity for running afoul of the law; thus, the second factor weighs in favor of admissibility.

## Similarity of Offenses

■ When a defendant's prior offense and the charged offense are similar, a danger arises that the jury will convict the defendant based on a perception of a pattern of past conduct rather than based upon the facts of the charged offense. *Theus,* 845 S.W.2d at 881. Therefore, when this circumstance exists, the law disfavors admitting evidence of the prior offense. *Id.* There is no similarity between

the offense of cocaine possession and murder. Although the State characterized the possession offense as a felony when the defendant was asked about this prior conviction, it characterized the assault offense as a crime of moral turpitude and no details of the assault were elicited. Under these circumstances, it is unlikely the jury would convict defendant based on any perceived similarity between assault and murder. *See Jackson,* 11 S.W.3d at 340 (holding, "There is little danger a jury would find someone guilty of murder or manslaughter based on any similarity between the crimes of aggravated rape or a crime against nature and murder or manslaughter."). Thus, the third factor weighs in favor of admissibility.

## Importance of Defendant's Testimony and Credibility

The last two factors are related, because both depend on the nature of a defendant's defense and the means available to him of proving that defense. The fourth *Theus* factor relates to the importance of a defendant's testimony at trial, while the fifth factor relates to the importance of a defendant's credibility as a witness. When the case involves the testimony of only the defendant and the State's witnesses, the importance of the defendant's credibility and testimony escalates. *Theus,* 845 S.W.2d at 881. As the importance of the defendant's credibility escalates, so will the need to allow the State an opportunity to impeach the defendant's credibility. *Id.* Here, only the defendant and the State's witnesses testified about what happened at Teresa's house; therefore, defendant's testimony was important. This fourth factor weighs against admissibility so as to allow defendant to testify without being impeached by his prior convictions. *See Jackson,* 11 S.W.3d at 340. However, because defendant's testimony was critical, the State's need to impeach him was also

great; therefore, the last factor favors admissibility. *See Jackson v. State,* 50 S.W.3d 579, 593 (Tex.App.-Fort Worth 2001, pet. ref'd). Because these two factors counterbalance one another, each mitigates the other's effect.

## Application of Factors

Only the first factor, which examines the impeachment value of prior crimes, weighs against admission. In *Theus,* the defendant was convicted of possessing and distributing cocaine. The Court of Criminal Appeals held that the lack of impeachment value of a prior conviction for arson overrode the other factors. 845 S.W.2d at 881. Its reasoning was twofold. First, the arson conviction had very little probative value on the question of defendant's credibility, but it carried a significant prejudicial effect. *Id.* at 881–82. The Court noted that the reference to arson had the potential to conjure up images of "burning buildings and insurance fraud." *Id.* at 882 n. 9. Second, the trial court missed an opportunity to dispel the prejudicial effect of the testimony when it prohibited the defense from presenting facts related to the arson conviction. *Id.* at 882. After a domestic dispute, the defendant had poured a beer can full of gasoline into his girlfriend's postal slot and ignited it. *Id.* There was no monetary damage. *Id.* at 877. The Court believed that the true nature of these facts greatly differed from the images an arson conviction might conjure up in a juror's mind. *Id.* at 882 n. 9.

This case can be distinguished on both grounds. First, the potential prejudicial effect of assault and cocaine possession are less dramatic than that created by images of arson. Second, this trial court specifically instructed the jury that it could only consider the prior convictions for the purpose of assessing defendant's credibility and the weight to be given his testimony and for no other purpose, thereby lessen-

ing any prejudicial effect. *See Norris v. State*, 902 S.W.2d 428, 441 (Tex.Crim.App. 1995). We must presume the jury followed these instructions. *Gamez v. State*, 737 S.W.2d 315, 324 (Tex.Crim.App.1987). Therefore, we do not believe the lack of impeachment value of the prior convictions outweighs the other four *Theus* factors favoring admission. As such, the trial court did not abuse its discretion in admitting the evidence of defendant's prior convictions.

## INSTRUCTION ON AGGRAVATED ASSAULT

■ The jury received instructions on murder and involuntary manslaughter. Defendant asserts the trial court erred in denying his request for a jury instruction on the lesser-included offense of aggravated assault. Defendant testified he did not plan or intend to kill Johnson or cause him serious bodily injury, or commit any act that could result in Johnson's death; he did not ask Ross to fight Johnson; and he did not intend Ross to kill Johnson.

■ A jury charge on the lesser offense is not always required merely because proof of a lesser offense is included within the proof of the greater offense. *Creel v. State*, 754 S.W.2d 205, 210 (Tex. Crim.App.1988). Whether a charge on a lesser-included offense is required is determined by a two-pronged test: first, we must determine whether the offense constitutes a lesser-included offense, and second, some evidence must exist in the record that would permit a jury to rationally find that, if guilty of an offense, defendant is guilty only of the lesser-included offense. *Schweinle v. State*, 915 S.W.2d 17, 18 (Tex.Crim.App.1996); *Rousseau v. State*, 855 S.W.2d 666, 672 (Tex.Crim.App. 1993). As long as evidence from any source raises an issue that a lesser-included offense may have been committed, and

a jury charge is properly requested, the issue must be submitted to the jury. *Thomas v. State*, 699 S.W.2d 845, 849 (Tex. Crim.App.1985). The credibility of the evidence and whether it is disputed or conflicts with other evidence may not be considered in determining whether such a charge should be given. *Id.* However, the evidence must establish the lesser-included offense as a valid, rational alternative to the charged offense. *Wesbrook v. State*, 29 S.W.3d 103, 113 (Tex.Crim.App.2000). This is so because the second prong of the test preserves the integrity of the jury as the factfinder by ensuring that the jury is instructed on a lesser-included offense only when that offense constitutes a valid, rational alternative to the charged offense. *Arevalo v. State*, 943 S.W.2d 887, 889 (Tex. Crim.App.1997). If a jury were instructed on a lesser-included offense not raised by the evidence, then the instruction "would constitute an invitation to the jury to return a compromise or otherwise unwarranted verdict." *Id.* On the other hand, if the evidence raising the lesser-included offense also casts doubt on the greater offense, the factfinder is provided with a rational alternative to the charged offense. *Forest v. State*, 989 S.W.2d 365, 367 (Tex. Crim.App.1999).

■ The State concedes, and we agree, that aggravated assault is a lesser-included offense of murder. *Cardenas v. State*, 30 S.W.3d 384, 392 (Tex.Crim.App.2000). The second prong of the test can be satisfied if there is some evidence that would allow a rational jury to find that if the defendant is guilty, he is guilty only of aggravated assault. *Bergeron v. State*, 981 S.W.2d 748, 750 (Tex.App.-Houston [1st Dist.] 1998, pet. ref'd). A person commits an aggravated assault if he intentionally, knowingly or recklessly causes serious bodily injury to another. TEX. PENAL CODE ANN. §§ 22.01(a)(1), 22.02(a)(1) (Vernon

1994). "Serious bodily injury" is defined as any injury that "creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id.* § 1.07(a)(46).

Defendant's statement that he did not intend to cause Johnson's death or serious bodily injury is not evidence that he is guilty only of aggravated assault in light of other evidence of his intent to cause serious bodily injury. *See Cardenas,* 30 S.W.3d at 393. Defendant admitted: he hit Johnson first; he kicked Johnson while he was on the floor and not fighting back; and he stopped fighting with Johnson in order to hit Teresa, but then went back to hitting Johnson. The medical examiner stated that Johnson's injuries to his face and head were consistent with numerous blows by a fist or by kicking, and he died as a result of complications resulting from an assault in which he received multiple blunt force injuries to his face and head. This evidence shows that defendant intentionally caused serious bodily injury and committed an act clearly dangerous to human life that caused Johnson's death. *See Cardenas,* 30 S.W.3d at 393 (defendant's statement that "he lost it" and did not realize how hard he hit the victim did not negate physical evidence of his intent to kill).

The jury was instructed that a person commits murder if he "intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual." *See* Tex. Penal Code Ann. § 19.02(b)(2). There was no evidence here that if defendant was guilty, he was guilty only of aggravated assault. *See Forest,* 989 S.W.2d at 367–68; *Harrell v. State,* 659 S.W.2d 825, 827 (Tex.Crim.App.1983); *see also Jackson v. State,* 992 S.W.2d 469, 475 (Tex.Crim.App.1999)

(not entitled to instruction on the lesser-included offense of aggravated assault when evidence showed appellant, at least, guilty of homicide). Thus, the trial court did not err in refusing an instruction on aggravated assault.

We affirm the trial court's judgment.