Affirmed and Opinion filed October 9, 2003









Affirmed
and Opinion filed October 9,  2003.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-02-00847-CR

NO. 14-02-00848-CR

____________

 

GARY JERMAINE REESE, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 232nd District Court

Harris County, Texas

Trial Court Cause Nos. 882,716 &
882,937

 



 

M
E M O R A N D U M  O P I N I O N

Appellant
Gary Jermaine Reese was convicted by a jury of two counts of aggravated sexual
assault of a child, a first-degree felony. 
See Tex. Pen. Code Ann.
'
22.021 (Vernon 2003).  Appellant alleges
three points of error.  We affirm.








Background

In
June 2001, appellant was dating S.H., the complainant=s
mother.  Approximately two weeks after
appellant and S.H. ended their relationship, appellant stopped by S.H.=s
residence.  One of S.H.=s
12-year-old boys answered the door. 
After learning that S.H. was not at home, appellant decided to wait
inside the home until she returned.  S.H.=s
13-year-old daughter, A.H., testified that she was asleep in her mother=s
upstairs bedroom the night the events took place.  A.H. stated that while she was asleep,
appellant came into her mother=s bedroom and removed her pajama
bottoms.  She testified that appellant
then penetrated her vagina with his penis and made a crude comment about her
vagina.   

After
a few minutes had passed, A.H=s younger brother became concerned
and went upstairs to check on his sister. 
When he reached his mother=s bedroom, the door was locked, so
he knocked on the door.  After a short
pause, A.H. opened the door with a scared look on her face.  The little brother could see appellant
walking toward the bathroom and doing something with his pants.  Suspecting something was wrong, the brother
asked A.H. to go downstairs and help him find a video game.  

A.H.
was attempting to tell her brother to call 9-1-1 when appellant came downstairs
and told her to go back upstairs. 
Appellant directed A.H. back into her mother=s
bedroom.  He then pulled A.H. onto the
floor, removed her pajama bottoms, and again placed his penis inside her
vagina. Appellant ultimately ejaculated on A.H.=s thigh.  

When
S.H. returned home, A.H. told her mother what had happened.  S.H. called the police and took her daughter
to the hospital where a rape kit was collected. 
Appellant=s DNA was found on A.H.=s
vagina, thigh, and a mixture of appellant=s and A.H=s
DNA was found on the crotch of A.H=s pajamas.  








Appellant
testified that he was innocent. 
Appellant claimed that he did not get along with A.H. and the two had
many conflicts while he was dating her mother. 
He asserted the DNA must have come from earlier sexual relations between
himself and S.H., even though all sexual relations ended approximately one week
prior to the alleged incident.  

Issue One: Expert Testimony

In
his first issue, appellant contends the trial court erred in admitting the
State=s
DNA expert=s testimony.  The trial court first conducted a hearing
outside the presence of the jury to determine whether the testimony of the
State=s
DNA expert, Reynard Cockrell, was admissible. 
At the conclusion of the hearing, appellant=s
counsel made two objections to the admission of Mr. Cockrell=s
testimony: (1) Mr. Cockrell was not qualified to interpret the results of the
DNA analysis, and (2) Mr. Cockrell=s analysis was not reliable because
he  did not produce documentation showing
that tests were performed to ensure the DNA evidence had not been
contaminated.  The trial court admitted
Mr. Cockrell=s testimony.   

We
review the trial court=s decision to admit or exclude
scientific expert testimony under an abuse of discretion standard.  Sexton v. State, 93 S.W.3d 96, 99
(Tex. Crim. App. 2002).  The trial court
abuses its discretion if it acts without reference to any guiding rules and
principles.  Montgomery v. State,
810 S.W.2d 372, 380 (Tex. Crim. App. 1990). 
Thus, we will uphold the trial court=s decision as long as it is within
the zone of reasonable disagreement, given the evidence presented and the
requirements of Rule 702 of the Texas Rules of Evidence.  Sexton, 93 S.W.3d at 99.   

The
trial court is guided by Texas Rule of Evidence 702 in determining whether
expert testimony should be admitted.  Kelly
v. State, 824 S.W.2d 568, 572 (Tex. Crim. App. 1992).  Rule 702 provides: AIf
scientific, technical, or other specialized knowledge will assist the trier of
fact to understand the evidence or to determine a fact in issue, a witness
qualified as an expert by knowledge, skill, experience, training, or education
may testify thereto in the form of an opinion or otherwise.@  Tex.
R. Evid. 702.  The trial court
serves as Agatekeeper@,
admitting evidence only if it is sufficiently reliable and relevant to assist
the jury.  Jordan v. State, 928
S.W.2d 550, 554B55 (Tex. Crim. App. 1996).








The
proponent of the scientific evidence must show through clear and convincing
evidence that the proffered evidence is reliable.  Jackson v. State, 17 S.W.3d 664, 670
(Tex. Crim. App. 2000).  This is
accomplished by showing (1) the validity of the underlying scientific theory,
(2) the validity of the technique applying the theory, and (3) the proper
application of the technique on the occasion in question.  Kelly, 824 S.W.2d at 573.  Additional factors that may affect
reliability include, but are not limited to, the following: (1) the extent to
which the underlying scientific theory and technique are accepted as valid by
the relevant scientific community, if such a community can be ascertained; (2)
the testifying expert=s qualifications; (3) the existence
of literature supporting or rejecting the underlying scientific theory and
technique; (4) the technique=s potential rate of error; (5) the
availability of other experts to test and evaluate the technique; (6) the
clarity with which the underlying scientific theory and technique can be
explained to the court; and (7) the experience and skill of the person who
applied the technique on the occasion in question. Kelly, 824 S.W.2d at
573.  








During
the hearing to determine the admissibility of the State=s
DNA expert=s testimony, Mr. Cockrell testified
that he had worked for the Houston Police Department Crime Laboratory for seven
years, and had been performing DNA analysis for five years.  Mr. Cockrell holds a Bachelor=s
and Master=s Degree in biology, received
in-house training at the Houston Police Department Crime Laboratory, and
attended several training seminars on DNA testing and analysis.  With regard to the testing performed in this
case, Mr. Cockrell explained that STR DNA testing was performed.  He stated that STR, or short tandem repeats,
is an upgraded version of PCR DNA testing, and that STR DNA testing is accepted
world-wide and considered an accurate form of genetic testing.  He explained the processes he used to perform
the test: the first step is extraction, preformed by Aremov[ing]
everything from [the] stain but the exception of DNA.@  After extraction, he quantified the DNA
present and then amplified it to develop a DNA profile through a process of
electrophoresis.  Once a profile is
developed, it is typed to determine whether it is consistent with a known
sample.  He further stated that he
followed the proper procedures in performing the DNA testing and analysis in
this case.

On
cross-examination, appellant=s counsel questioned Mr. Cockrell
regarding the procedures employed by the lab to guarantee the DNA evidence was
not contaminated.  Mr. Cockrell explained
that negative and positive controls are always used to ensure the evidence is
not contaminated and the test is performed properly.  He stated the positive controls ensure the
test Aran
exactly as it should have been,@ and the negative controls Adetermine
whether or not you have any contamination in your evidence.@  Appellant=s counsel asked for a document to
verify whether these controls were in fact used in this case.  Mr. Cockrell testified that two tests were
actually performed with each DNA sample, called the profiler and co-filer
kits.  Mr. Cockrell, however, only
produced a print-out of the positive and negative controls used in the co-filer
kit.  He consistently and repeatedly
stated that the positive and negative controls were used for both the profiler
and the co-filer kits and explained that the Aexact same@
positive and negative controls used on the co-filer kit were also used on the
profiler kit.  

Appellant
complained to the trial court, and now complains on appeal, that the DNA
testing, and thus Mr. Cockrell=s testimony, is unreliable because
Mr. Cockrell did not produce documentation showing positive and negative
controls were used on the profiler kit. 
The trial court concluded the State had shown by clear and convincing
evidence that the STR DNA testing was sufficiently reliable and relevant to
help the jury in reaching accurate results. 
We agree.








Applying
the Kelly factors, (1) Mr. Cockrell testified, and it was not disputed,
that STR DNA testing is accepted world-wide; (2) he has a Bachelor=s
and Master=s degree in Biology, as well as, five
years=
experience in DNA testing; (3) Mr. Cockrell testified that STR DNA testing is
an accurate form of genetic testing; (4) based on the world-wide acceptance of
STR DNA testing, there would be a number of other experts available to test and
evaluate the technique; (5) Mr. Cockrell was able to explain the underlying
scientific theory and technique with clarity; and (6) a vast amount of
scientific literature exists discussing STR DNA testing.[1]  The trial court has great discretion in
deciding whether to admit or exclude evidence. 
We find nothing in the record demonstrating the trial court abused its
discretion by admitting Mr. Cockrell=s testimony in the absence of written
documentation showing  positive and
negative controls were used on the profiler kit.  See Hines v. State, 38 S.W.3d
805, 808B09
(Tex. App.CHouston [14th Dist.] 
2001, no pet.) (holding trial court did not abuse its discretion by
admitting DNA testimony because appellant only raised the possibility that the
expert committed an error and could not point to any specific instances of
error).   

Appellant
also contends Mr. Cockrell is not qualified to interpret the results of the DNA
testing.  While appellant=s
counsel admitted before the trial court that Mr. Cockrell was A[c]ertainly
qualified to run the test,@ counsel objected to Mr. Cockrell=s
testimony  because Ahe=s
not qualified to interpret the results of this test and I object to him being
allowed to testify to any probabilities that Mr. Reese [is] a >match
in this particular case.=@  The State, however, is not required to
present probability and statistics experts in order to show that the DNA
testing is reliable and relevant.  Roberson
v. State, 16 S.W.3d 156, 168 (Tex. App.CAustin
2000, pet. ref=d); Griffith v. State, 976
S.W.2d 241, 251 (Tex.
App.CAmarillo 1998, pet. ref=d).   Neither Kelly nor Rule 702 require
such a showing as a prerequisite to admission. 
Roberson, 16 S.W.3d at 168; Griffith, 976 S.W.2d at
251.  Accordingly, we hold the trial
court did not abuse its discretion in concluding the State demonstrated by
clear and convincing evidence that Mr. Cockrell=s testimony concerning STR DNA
testing, as well as its interpretation, was reliable and relevant to aid the
jury in determining appellant=s guilt or innocence on the charged
offense.  

 








Issue Two: 
Impeachment
by Prior Conviction

In
his second issue, appellant contends the trial court erred in admitting
evidence of his prior conviction for impeachment purposes.  As previously stated, we review the trial
court=s
decision to admit or exclude evidence under an abuse of discretion
standard.  Theus v. State, 845
S.W.2d 874, 881 (Tex. Crim. App. 1992). 
As long as the trial court=s decision is within the realm of
reasonable disagreement, it will not be disturbed on appeal.  Id. 


Once
a defendant testifies, he places his credibility at issue and may thereafter be
impeached like any other testifying witness. 
Dale v. State, 90 S.W.3d 826, 829 (Tex. App.CSan Antonio 2002, pet. ref=d).  Texas Rule of Evidence 609(a) provides that,
for the purpose of attacking the credibility of a witness, evidence that a
person was convicted of a crime shall be admissible if the prior  conviction was a felony or a misdemeanor
involving moral turpitude and the court determines the probative value of
admitting the prior conviction outweighs its prejudicial effect.  Tex. R.
Evid. 609(a).  In this case,
appellant=s prior conviction of aggravated
assault is a felony.  Therefore, the
conviction was properly admitted unless the probative value of admitting the
prior conviction outweighs its prejudicial effect.       As
the proponent, the State bears the burden of demonstrating the probative value
of the prior aggravated assault conviction outweighs its prejudicial
effect.  Theus, 845 S.W.2d at
880.  In Theus, the court set out
a non-exclusive list of factors to be considered in deciding whether the State
met its burden.  Id.  These factors include: (1) the impeachment
value of the prior crime; (2) the temporal proximity of the past crime relative
to the charged offense and the witness= subsequent history; (3) the
similarity between the past crime and the offense being prosecuted; (4) the
importance of the defendant=s testimony; and (5) the importance
of the defendant=s credibility.  Id. 
Accordingly, we will address each factor.  

1.       Impeachment
Value








Since
the defendant=s credibility is at issue, the
impeachment value of crimes involving deception is greater than crimes
involving violence.  Id. at 881; Pierre
v. State, 2 S.W.3d 439, 442 (Tex. App.CHouston [1st Dist.]
1999, pet. ref=d). 
Crimes involving violence inherently contain a higher potential for
prejudice; therefore, if the prior conviction involves deception and not
violence, this factor will favor admissibility. Theus, 845 S.W.2d at
881.  Because aggravated assault involves
violence rather than deception or untruthfulness, it would not ordinarily weigh
against a witness= honesty.  Therefore, this factor weighs against
admissibility.                

2.       Temporal
Proximity and Subsequent History

The
second factor favors admission if the past crime is recent and the witness has
demonstrated a propensity for breaking the law. 
Id.  It is important to
look at the amount of time that has elapsed between the charged offense and the
prior conviction.  Simpson v. State,
886 S.W.2d 449, 452 (Tex.
App.CHouston [1st Dist.] 1994, pet. ref=d).  Rule 609(b) provides a more stringent test if
more than ten years have elapsed since the date of conviction or release.  Tex.
R. Evid. 609(a) & (b).  This
more stringent test is inapplicable to this case because appellant was
convicted of aggravated assault in 1995, well within the ten-year range.  The temporal proximity of the prior
conviction favors admissibility.  

3.       Similarity








When
the prior conviction is for a crime that is similar to the charged offense, a
danger arises that the jury will convict the defendant based on a belief that
the defendant acted in conformity with the prior offense.  Theus, 845 S.W.2d at 881; Pierre,
2 S.W.3d at 443.  Thus, if the crimes are
similar, this factor weighs against admission. 
Theus, 845 S.W.2d at 881. 
Appellant was charged with aggravated sexual assault of a child, and the
aggravating element was the age of the child, not violence.  In contrast, jurors are more likely to equate
aggravated assault with the use of violence. 
Since both crimes do not involve violence, we find this factor weighs in
favor of admissibility.  Furthermore, the
judge instructed the jury that it could only consider the prior conviction for
the purpose of weighing the defendant=s credibility and for no other
purpose, thereby reducing any prejudicial effect.  Norris v. State, 902 S.W.2d 428, 441
(Tex. Crim. App. 1995).  We must presume
the jury followed the court=s charge.  Gamez v. State, 737 S.W.2d 315, 324
(Tex. Crim. App. 1987).

 4.      Importance
of Defendant=s Testimony and Credibility

The
fourth and fifth factors are closely related, especially if the defense=s
only witness is the accused.  Theus,
845 S.W.2d at 881.  The fourth factor
concerns the importance of the defendant=s testimony, while the fifth factor
relates to the defendant=s credibility.  Id. 
If the defendant is the sole witness for the defense, then the
importance of his testimony and credibility escalates; however, as the
importance escalates, the need for the State to impeach the defendant also
escalates.  Id.; Simpson,
886 S.W.2d at 452B53. 
In this case, appellant was the sole witness in his defense; therefore,
both factors favor admissibility of the prior conviction. 

We
find that four of the five factors favor admission of appellant=s
prior conviction of aggravated assault. 
The sole factor which militates against admission, impeachment value,
does not trump the remaining four factors in this case.  In reviewing the trial court=s
decision to admit evidence of the prior conviction, we find the trial court=s
decision to allow the evidence was not an abuse of discretion.  We overrule appellant=s
second issue.    

Issue Three: 
Cruel & Unusual Punishment

In
his final issue, appellant claims the trial court=s cumulation of appellant=s
sentence pursuant to the State=s motion constitutes cruel and
unusual punishment under the Eighth Amendment. 
After punishment was assessed by the jury at fifty-years=
confinement for each offense, the trial court considered the State=s
motion to cumulate the sentences. 
Appellant=s counsel argued that Aaccumulation@
was improper because appellant would not be eligible for parole until he was
close to fifty years old and the two separate offenses were Aone
almost continuous [assault].@ The court granted the State=s
motion and then asked appellant=s counsel the following critical
question: ADoes the Defense have anything to
say in bar of sentence?@ 
Appellant=s counsel replied ANo
Your Honor.@ 









Appellant
failed to preserve error because there was no trial objection concerning cruel
and unusual punishment.  Curry v.
State, 910 S.W.2d 490, 497 (Tex. Crim. App. 1995); Stevens v. State,
667 S.W.2d 534, 538 (Tex. Crim. App. 1984). 
The only objection appellant made related to the trial court=s
charging of two counts of aggravated sexual assault because, as appellant
argued, there was only one continuous offense. 
This objection is not related and is not sufficient to preserve an
Eighth Amendment claim.  Appellant=s
third issue is overruled.  

We
affirm the judgment of the trial court.

 

 

 

/s/        John
S. Anderson

Justice

 

 

 

 

Judgment rendered and Opinion filed
October 9, 2003.

Panel consists of Chief Justice
Brister and Justices Anderson and Seymore.

Do Not Publish C
Tex. R. App. P. 47.2(b).

 











[1]  This court may
take judicial notice of scientific literature not presented by either party at
trial or on appeal.  Mata v. State,
46 S.W.3d 902, 910 (Tex. Crim. App. 2001); Emerson v. State, 880 S.W.2d 759, 764B65 & 765 n. 1 (Tex.
Crim. App. 1994).