*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*


# MEMORANDUM OPINION

No. 04-07-00833-CR

Gregory D. **BOLTON**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 379th Judicial District Court, Bexar County, Texas
Trial Court No. 2005-CR-5849
Honorable Bert Richardson, Judge Presiding

Opinion by:   Phylis J. Speedlin, Justice

Sitting:      Catherine Stone, Justice
             Phylis J. Speedlin, Justice
             Steven C. Hilbig, Justice

Delivered and Filed:  November 19, 2008

AFFIRMED

Gregory Bolton appeals his robbery conviction, asserting that:  (1) the evidence is factually insufficient to prove his identity as the perpetrator; and (2) the court erred in admitting extraneous offense evidence during the guilt/innocence phase.  We affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On or about May 21, 2005, the Han-Lee Grocery, a small "mom and pop" store, was robbed by a man displaying an apparent gun wrapped in a black trash bag and wearing a dark covering over

his face. Roger Lew, an older gentleman and the store owner, stated he was alone when the robber came in and pointed the apparent weapon at him, which Lew thought was a rifle; the robber put a paper bag on the store counter, and demanded he "fill it up." Lew gave him all of the money in the cash register, which was between $60 and $80 and separated by denominations of ones, fives and tens. Lew stated he was able to see part of the robber's face because the dark "scarf" kept slipping down below his nose. The robber warned Lew not to call the police and backed out the door.

About ten to twenty seconds later, David Parker, who had a business in the neighborhood and knew Lew, entered the store and asked Lew what had happened. When Lew stated he had just been robbed, Parker left the store to search for the robber. As he was approaching the store, Parker had seen someone run out of the store "like they were playing football . . . kind of hunched over," and run through the parking lot behind the store. The man was wearing blue jean shorts and a white T-shirt. After going inside to check on Lew, Parker got in his car to pursue the man he had seen running away. Parker drove along Sanders Street, which runs behind the Han-Lee Grocery; he saw a man wearing jeans shorts and a white T-shirt running down the street and slowly followed him. The man stopped running when he reached a parked white car with its hood propped up; he opened and then closed the car trunk, closed the hood, and entered the driver's seat. Parker drove on past before pulling over and calling 911; he gave the dispatcher the car's license plate number and a general description of the man. As Parker was on the phone, the man drove past Parker's car, and Parker "got a good look at his face." Parker followed the white car for a short distance, but then returned to the store. Lew estimated that Parker was only gone about five minutes.

After he returned to the store, Parker was standing outside talking to the police when he noticed a white car, which looked similar and was making the same kind of loud noise, driving

slowly toward the store. Parker told the officers it was the same car he had followed. After confirming the license plate matched, the officers stepped out with guns drawn and commanded the driver to stop. The driver did not immediately obey, and an officer had to open the driver's door and put his own foot on the brake before putting the car in "park." Another officer had to cut the driver out of his seat belt because he had a second T-shirt (black) pulled on over the seat belt; he was wearing a white T-shirt underneath. The officers retrieved $65 in cash, organized by denominations of ones, fives and tens, and a screwdriver which were laying on the front passenger seat, and a dark-colored shirt in the back seat; in the trunk they found a two to three foot long pipe. At the scene, Lew identified the driver, Bolton, as the man who had robbed him. Parker also identified Bolton as the man he saw running from the store and driving away in the white car. An officer retraced the man's path of flight down Sanders Street, based on Parker's description, and found a discarded "ski mask" or "watch cap" with two crude eye holes cut out at the location where Parker said the white car was parked. No gun was found. Bolton was indicted for the robbery as a repeat offender. After being convicted by a jury, Bolton pled true to the enhancement allegations, and was sentenced to 12 years' imprisonment. He timely appealed.

## FACTUAL SUFFICIENCY

In his first issue, Bolton contends the evidence is factually insufficient to support the jury's finding that he was the perpetrator of the robbery. In reviewing factual sufficiency, we consider all the evidence in a neutral light, giving almost complete deference to the jury's determinations of credibility. *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008). We will reverse the conviction only if the evidence in support of the verdict, although legally sufficient, is so weak that the verdict is clearly wrong and manifestly unjust, or if, considering conflicting evidence, the verdict

is outweighed by the great weight and preponderance of the evidence. *Id.*; *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006).

As charged in the indictment, to convict Bolton of robbery the State had to prove that, (1) in the course of committing theft of property, (2) and with intent to obtain or maintain control of the property, (3) he intentionally and knowingly threatened and placed Roger Lew in fear of imminent bodily injury and death. *See* TEX. PENAL CODE ANN. § 29.02(a)(2) (Vernon 2003). The State must also prove the defendant's identity as the person who committed the offense beyond a reasonable doubt. *Johnson v. State*, 673 S.W.2d 190, 196 (Tex. Crim. App. 1984); *Wiggins v. State*, 255 S.W.3d 766, 771 (Tex. App.—Texarkana 2008, no pet.). Identity can be established through direct or circumstantial evidence, as well as through inferences drawn from the evidence. *Earls v. State*, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986); *Roberson v. State*, 16 S.W.3d 156, 167 (Tex. App.—Austin 2000, pet. ref'd).

Here, Bolton asserts that the evidence linking him to the commission of the robbery is "so weak that it undermines the integrity of the verdict." *See Watson*, 204 S.W.3d at 414-15. Specifically, Bolton points to inconsistencies between the descriptions of the robber given by Lew and Parker, and the physical evidence recovered near the scene. At trial, Lew testified the robber wore a dark colored "scarf" wrapped around his head that kept slipping down below his nose, enabling Lew to see part of his face. However, Officer Doxie testified he was the first officer on the scene, and Lew described the robber to him as "a black male between 6 feet and 5-10", medium build . . . [with] saggy pants on and . . . a black *mask* over his face." Parker described the man he saw running away as wearing jeans shorts and a white T-shirt, but did not mention anything covering his head or face; however, Parker saw the man from behind – it was only after the man drove past

him that Parker said he "got a good look" at his face. The physical evidence recovered on the street behind the store was described by the officer as a dark "ski mask" or "watch cap;" the photographs contained in the record are consistent with that description.[1] According to the officer, the ski mask had two "pretty big" eye holes cut out of it, supporting an inference that the mask could slip out of place; however, the officer agreed with defense counsel that the ski mask would probably not slip down from the top of the head. Finally, the officer testified that he showed the ski mask to Lew at the scene, and Lew recognized it and believed it was worn by the robber. Despite Lew's description of the robber's head covering as a "scarf," the jury could have chosen to give more weight to the officer's testimony that Lew identified the ski mask as the item worn by the robber. *See Swearingen v. State*, 101 S.W.3d 89, 97 (Tex. Crim. App. 2003) (under factual sufficiency standard, although authorized to disagree with the jury even if probative evidence exists to support the verdict, the reviewing court must give due deference to the jury's determinations concerning the weight and credibility of the evidence).

Bolton also attacks the strength of the witnesses' identification of him, both at the scene and later in court. At the scene, Officer Doxie testified that Lew identified Bolton, the driver of the white car, as the robber, stating that "it looked like him" and he "thought it was him." Lew testified that the person the police arrested at the scene was the man who robbed him, and he recognized the robber by his "height and weight" and because his "scarf kept slipping off his face." Parker testified that he identified Bolton at the scene as the man he saw running from the store based on Bolton being the same body size and race, wearing the same clothes, and having the same haircut, and also

---

[1] The officer referred to the item he recovered as both a "ski mask" and a "watch cap." He explained that "watch cap" is a common term used in the military to describe a ski mask worn to keep a person's head warm while he or she is keeping watch.

recognized him as the same man he saw driving away in the white car.  Identification testimony of this type has been held sufficient.  *See Sosa v. State*, 177 S.W.3d 227, 230-31 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (evidence was legally and factually sufficient to establish defendant's identity as man who committed robbery, even though witnesses were unable to describe robber's face, where they described robber's appearance based on clothing, height and build, and defendant was seen fleeing the scene).

Both Lew and Parker also made positive in-court identifications of Bolton as the robber. Bolton contends that Lew's in-court identification is "questionable because it was obvious that Mr. Bolton was sitting at the counsel table with his attorney" and "[t]here was no other likely candidate for Mr. Lew to identify."  Bolton, however, cites no supporting authority for his assertion that the mere fact that a defendant is present in court as the accused undermines the weight to be given an eyewitness's identification testimony.  Indeed, this argument has been rejected and we similarly consider it to be without merit.  *See Maxwell v. State*, 10 S.W.3d 785, 786-88 (Tex. App.—Austin 2000, no pet.) (rejecting argument that in-court identification of defendant who is sitting at counsel table, without benefit of a previous line-up, violates due process and finding no error in denial of defendant's request to sit in the audience during in-court identification) (internal citations omitted). As to Parker's in-court identification, Bolton asserts that Parker's criminal history, which was fully discussed before the jury, undermined his credibility.  However, the jury is free to assess a witness's credibility and to believe all, part, or none of the witness's testimony, and we may not simply substitute our judgment for that of the jury.  *See Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000) (appellate court's evaluation should not substantially intrude upon the jury's role as the sole judge of the weight and credibility given to witness testimony).

In addition to the identification testimony of Lew and Parker, other physical evidence seized from the white car Bolton was driving corroborates his identity as the robber: (1) $65 in cash which is within the $60 to $80 range Lew said was stolen; (2) with the bills organized into the same $1, $5 and $10 denominations as the stolen money; (3) laying loose on the front seat in plain view; (4) a screwdriver laying near the cash on the front seat, and a two to three foot long pipe in the trunk, either of which could have been wrapped up to look like a gun; and (5) a dark-colored shirt in the back seat. In addition, Lew testified that some time after the robbery, Bolton came into his store and asked Lew not to testify against him. Considering all the evidence in the record, including the testimony by Lew and Parker and the corroborating physical evidence, we cannot say the evidence is "so weak" that the jury's verdict seems clearly wrong and manifestly unjust. Bolton's factual sufficiency challenge fails.

### EXTRANEOUS OFFENSE EVIDENCE

In his second and third issues, Bolton asserts the trial court erred in admitting evidence that he threatened to kill David Parker's family if Parker testified against him because (1) there was insufficient evidence for the court to determine that a jury could find beyond a reasonable doubt that Bolton made the threat, and (2) even if otherwise admissible, the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. At trial, Parker testified over objection that, right before trial, Bolton asked him if he was going to testify against him. When Parker said "yes," Bolton stated that he had researched Parker's background and if Parker testified against him, he "would kill [Parker's] whole family, mother, sisters and brothers."[2] We review the trial court's

---

[2] Parker also testified to another incident that occurred a few months after the robbery, in which Bolton told Parker, "I'm the guy from the Chinaman grocery store . . . don't take my freedom from me." Bolton does not challenge admission of this testimony, and, in fact, did not object to it at trial.

decision to admit this evidence for an abuse of discretion. *Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007); *Robbins v. State*, 88 S.W.3d 256, 262 (Tex. Crim. App. 2002). As long as the trial court's ruling was within the zone of reasonable disagreement, and was correct under any applicable theory of law, we will uphold the ruling. *Winegarner*, 235 S.W.3d at 790; *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g).

Under Rule 404(b), evidence of a defendant's "other crimes, wrongs or acts" is not admissible to show character conformity, but may be admissible for other purposes such as proof of "intent . . . plan, knowledge, [or] identity." TEX. R. EVID. 404(b). The list of permissible purposes contained in Rule 404(b) is not exhaustive. *Garcia v. State*, 201 S.W.3d 695, 703 (Tex. Crim. App. 2006) (noting that evidence is relevant to a material issue if the purpose for which its admission is sought tends to make the existence of a fact of consequence more or less probable). The Court of Criminal Appeals has held that evidence of a defendant's other "criminal acts that are designed to reduce the likelihood of prosecution, conviction, or incarceration for the offense on trial are admissible under Rule 404(b) as showing 'consciousness of guilt.'" *Ransom v. State*, 920 S.W.2d 288, 299 (Tex. Crim. App. 1996) (op. on reh'g) (listing examples, including threats against witnesses and their families). Any attempt to tamper with a witness, or threaten a witness or their family, is probative of a defendant's "consciousness of guilt," and is therefore relevant under Rule 404(b). *Wilson v. State*, 7 S.W.3d 136, 141 (Tex. Crim. App. 1999); *Brown v. State*, 657 S.W.2d 117, 119 (Tex. Crim. App. 1983); *Peoples v. State*, 874 S.W.2d 804, 809 (Tex. App.—Fort Worth 1994, pet. ref'd).

Before a trial court may admit extraneous offense evidence under Rule 404(b), however, it must determine whether a jury could find beyond a reasonable doubt that the defendant actually

committed the extraneous offense. TEX. R. EVID. 104(b); *see Harrell v. State*, 884 S.W.2d 154, 159-60 (Tex. Crim. App. 1994) (under Rule 104(b), the trial court must make an initial determination as to relevancy of the evidence if it is dependent on the fulfillment of a condition of fact – such as whether the defendant committed the extraneous offense); *see also Fischer v. State*, 235 S.W.3d 470, 473 (Tex. App.—San Antonio 2007, pet. granted). Bolton states in his brief that the trial court failed to make the Rule 104(b) finding. However, the record indicates the court made the required finding before admitting the extraneous offense evidence, determining outside the jury's presence "whether or not they [the threats] were, in fact, made and, number two, if whatever was made is relevant to the guilt/innocence phase . . . ." The court found nothing to controvert that the threats were made by Bolton, and found the threat evidence "believable," noting, "I don't have anything in front of me to discredit it." The court ruled the evidence was relevant as "consciousness of guilt" evidence, and concluded that the threat evidence was admissible under both Rule 404(b) and Rule 403.

Bolton next argues there was insufficient evidence to support the trial court's determination that a jury could find beyond a reasonable doubt that Bolton threatened to kill Parker's family because (1) Parker was not credible due to his criminal history, and (2) it is "illogical" to believe Bolton threatened to kill Parker's family, but did not threaten Lew when he asked him not to testify against him. We first note that Parker's proffered testimony about Bolton's threat to kill his family was unequivocal and uncontradicted. The fact that Parker had a criminal history, and was in fact incarcerated at the time of his testimony in Bolton's trial, may have some impeachment value but does not automatically negate the probative value of his testimony. *See Dale v. State*, 90 S.W.3d 826, 830-31 (Tex. App.—San Antonio 2002, pet. ref'd). Further, even though they did not include explicit threats of harm, Bolton's two other requests to Parker and Lew not to testify against him

provide additional support for finding that Bolton did in fact make the threat against Parker's family; all three requests that witnesses not testify against him were made to impede his prosecution and conviction. Reviewing the trial court's initial determination under Rule 104(b) for an abuse of discretion, we cannot say that the trial court's finding was outside the zone of reasonable disagreement.

Finally, Bolton contends the court erred in admitting the threat evidence because any probative value was substantially outweighed by the danger of unfair prejudice, and therefore the evidence should have been excluded under Rule 403. TEX. R. EVID. 403. The rule carries a presumption that relevant evidence will be more probative than prejudicial. *Shuffield v. State*, 189 S.W.3d 782, 787 (Tex. Crim. App. 2006). The analysis under Rule 403 includes a balancing of the following factors: (1) the inherent probative force of the evidence; (2) the proponent's need for the evidence; (3) any tendency of the evidence to suggest decision on an improper basis; (4) any tendency of the evidence to confuse or distract the jury from the main issues; (5) any tendency of the evidence to be given undue weight by the jury; and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006); *Prible v. State*, 175 S.W.3d 724, 733 (Tex. Crim. App. 2005).

Here, the evidence of Bolton's threats against the key witness's family has strong probative value as to a contested matter – Bolton's guilt of the charged offense. As evidence of Bolton's "consciousness of guilt," it served to make a fact of consequence more probable, and was thus relevant and highly probative. *Gigliobianco*, 210 S.W.3d at 641; *see Ransom*, 920 S.W.2d at 299-300 (noting that the probative value of an extraneous crime showing "consciousness of guilt" may

well outweigh its prejudicial impact); *see also Torres v. State*, 794 S.W.2d 596, 598 (Tex. App.—Austin 1990, no pet.) (characterizing "consciousness of guilt" evidence as one of the strongest kinds of evidence of guilt). The time required to develop the evidence was brief, and it was not cumulative of other evidence already admitted. The State's need for the evidence was significant given that Parker admitted he lost sight of the man fleeing the store for a period of time, and the inconsistencies in the descriptions given by Lew and Parker. Finally, while the evidence of the threat to Parker's family is inflammatory, and could have "a tendency to suggest decision on an improper basis, [such as] . . . an emotional one," it is only rendered inadmissible if the danger of unfair prejudice *substantially* outweighs the probative value of the evidence. TEX. R. EVID. 403 (emphasis added); *Gigliobianco*, 210 S.W.3d at 641. We conclude that the highly probative nature of the "consciousness of guilt" evidence was not substantially outweighed by the inflammatory nature of the threat and any risk of unfair prejudice. *See Madden v. State*, 911 S.W.2d 236, 243 (Tex. App.—Waco 1995, pet. ref'd) (officer's testimony that defendant said he would shoot anyone, including police, who tried to stop him from leaving the state was admissible under Rule 404(b) as "consciousness of guilt" evidence, and its inflammatory nature did not substantially outweigh its probative value under the Rule 403 analysis). Therefore, we hold the trial court did not abuse its discretion by admitting the threat evidence, and overrule Bolton's second and third issues.

Based on the foregoing reasons, we affirm the trial court's judgment.

Phylis J. Speedlin, Justice

Do Not Publish