**Frederick Jerome JACKSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–98–01136–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 23, 1999.

Rehearing Overruled Jan. 20, 2000.

Tim Weatherly, Galveston, for Appellant.

Michael J. Guarino, Galveston County Courthouse, Criminal Dist. Atty., Joel Hunter Bennett, Asst. Criminal Dist. Atty., Galveston, for State.

Panel consists of Justices COHEN, TAFT, and SMITH.*

## OPINION

TIM TAFT, Justice.

Charged by indictment with murder, appellant, Frederick Jerome Jackson, was found guilty by a jury of the lesser offense of manslaughter. The court assessed punishment at 30 years in prison, after finding true the enhancement paragraph alleging a prior felony conviction for theft. We consider whether the trial court abused its discretion by allowing remote convictions for aggravated rape and a crime against nature to be used to impeach appellant. We reverse.

### Facts

Richard Romero and Teresa Black had lived together for 11 years before their relationship ended. Due to Romero's violent and explosive temper, Black had obtained a peace bond against him. On September 24, 1997, Romero arrived at Black's place of business in his pickup truck and spoke with Black while she stood outside her shop.

Clayton Lane Christmas owned and operated an alternator shop adjacent to Black's business. Christmas had given appellant an unpaid job in the shop, was teaching appellant how to repair alternators, and had allowed appellant to live in the shop's office.

While Black and Romero were conversing, appellant walked into Black's shop and asked the whereabouts of a gun owned by

Mr. Christmas. Rick Eddington, an employee of Black, told appellant the gun was in Eddington's truck. Appellant retrieved the gun from Eddington's truck and placed it in a Toyota pickup truck used in Black's business. While holding a jack handle, appellant then approached Black and Romero. Black told appellant to leave her and Romero alone and to go find something else to do. Appellant complied and walked away from Black and Romero. Appellant then got in the Toyota truck, started it, and tried to leave, but could not because he was blocked by Romero's truck.

When Rick Eddington told Black she had a phone call holding, Romero told Eddington that Black would not be taking the call. Then, when Black told Eddington and Romero she would be taking the call, Romero became irate and began threatening Black's employees. Black told Romero to leave and walked back into her shop. Romero drove off, still yelling obscenities at Black's employees and racial slurs at appellant.[1]

Appellant, who had stayed in the Toyota pickup truck, backed out and drove off in the same direction as Romero. Appellant caught up with Romero on the road leading away from Black's shop, and fired two shots at him. At least one of the shots struck Romero and caused a fatal wound. Appellant maintained he fired in self-defense and that Romero was pointing a gun at him just before he fired the shot that killed Romero.

### Impeachment with Prior Convictions

█ In his first point of error, appellant contends the trial court abused its discretion by allowing the State to impeach him before the jury with his prior convictions for aggravated rape and a crime against nature. Appellant argues that his prior

---

* The Honorable Jackson B. Smith, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

1. Romero yelled at appellant: "I'll kill you to [sic] nigger."

convictions were too remote and had no probative value in impeaching his testimony, and that permitting the State to use these prior convictions resulted in unfair prejudice that denied him a fair trial.

■ Rule 609 of the Texas Rules of Evidence governs the admissibility of prior convictions used to impeach a witness. Rule 609(a) allows the admission of a prior conviction into evidence for the purposes of impeachment, if the prior conviction involved a felony or a crime of moral turpitude, and the court determines the probative value "outweighs" its prejudicial effect.[2] In reviewing the trial court's decision admitting into evidence a prior conviction, we must accord the trial court "wide discretion." *Theus v. State*, 845 S.W.2d 874, 881 (Tex.Crim.App.1992).

■ In the case of a prior conviction and release that took place more than 10 years before being admitted at trial, the probative value must *"substantially* outweigh" the prejudicial effect.[3] Tex.R. Evid. 609(b); *Butler v. State*, 890 S.W.2d 951, 954 (Tex.App.—Waco 1995, pet. ref'd). Under rule 609(b), if the prior conviction was more than 10 years before trial, the probative value of the prior conviction must substantially outweigh the prejudicial effect and not simply outweigh the prejudicial effect, as under rule 609(a). *Hernandez v. State*, 976 S.W.2d 753, 755 (Tex. App.—Houston [1st Dist.]), *pet. ref'd* 980 S.W.2d 652 (Tex.Crim.App.1998). As this Court pointed out in *Hernandez*, however, an appellate court may find that, while a prior conviction is more than 10 years old,

later convictions for felonies or misdemeanors involving moral turpitude remove the taint of remoteness from the prior convictions. *Id.* In that circumstance, the rule 609(a) "outweigh" standard is appropriate because the "tacking" of the intervening convictions renders a conviction older than 10 years not remote. *Id.*

Appellant had two 1982 Louisiana felony convictions for aggravated rape and a crime against nature. He was released from confinement for these convictions in 1987. In 1994, appellant was convicted of felony theft, and, in 1997 of two separate misdemeanor thefts. Appellant's trial began on September 28, 1998. Although appellant's release from his prior Louisiana felony convictions was more than 10 years before his testimony in this trial, appellant's intervening convictions for felony and misdemeanor theft cause us to consider this case as if the prior Louisiana felony convictions were not remote. *See Hernandez*, 976 S.W.2d at 755.

Accordingly, the trial court should have applied the guidelines and factors enumerated in *Theus:*

> Federal courts of appeals have set out a number of factors to be considered in weighing the probative value of a conviction against its prejudicial effect. A non-exclusive list of such factors includes (1) the impeachment value of the prior crime, (2) the temporal proximity of the past crime relative to the charged offense and the witness' subsequent history, (3) the similarity between the past crime and the offense being prosecuted,

---

2. Tex. R. Evid. 609(a):

   (a) **General rule.**
   For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from the witness or established by public record but only if the crime was a felony or involved moral turpitude, regardless of punishment, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to a party.

3. Tex.R. Evid. 609(b):

(b) **Time Limit**
Evidence of a conviction under this rule is not admissible if a period of more than ten (10) years has elapsed since the date of the conviction or the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs the prejudicial effect.

(4) the importance of the defendant's testimony, and (5) the importance of the credibility issue.

*Theus,* 845 S.W.2d at 880–81.

The record does not reflect that the trial court performed any analysis of the probative value of the prior conviction, weighed against the prejudicial effect on the witness, before admitting the evidence of appellant's convictions. Instead, the trial court apparently relied on *Blevins v. State,* 884 S.W.2d 219, 229 (Tex.App.—Beaumont 1994, no pet.), in determining whether evidence of remote prior convictions was admissible. In *Blevins,* however, the defendant attempted to project himself as a truthful, peaceable person, and thus placed his reputation and character in issue. *Id.* at 229. Accordingly, admitting evidence of prior bad acts simply fell into an exception to the general rule that extraneous offenses are inadmissible because the defendant had opened the door by stating he had never been arrested, nor ever been in trouble. *Id.*

Nothing in the record of this case suggests any attempt by the appellant to portray himself as never arrested or in trouble with the law. Rather, appellant conceded his recent prior arrests during direct examination by his own counsel. The trial court should have relied on *Theus,* and not *Blevins,* to determine whether to admit a prior bad act to impeach appellant.

**A.  *Theus* Analysis**

We turn now to the test detailed in *Theus.* 845 S.W.2d at 880.

**1.  Impeachment value**

■ The impeachment value of a prior conviction is proportional to the extent to which the crime involved deception. *Id.* at 881. Aggravated rape is a crime of violence, not deception. This factor weighs against admission because crimes of violence have a higher prejudicial potential than impeachment value. *Id.* (citing *United States v. Jackson,* 627 F.2d 1198, 1210 (D.C.Cir.1980)). This is particularly true of aggravated rape, which, by its very nature, is extremely prejudicial. While it is unclear exactly what appellant's crime against nature involved, it is fair to say that prejudice overwhelmed any impeachment value. The first factor thus weighs very heavily against admissibility.

**2.  Temporal proximity and subsequent history**

■ These factors will favor admissibility if the past crime is recent and the witness has demonstrated a propensity for running afoul of the law. *Theus,* 845 S.W.2d at 881. Appellant's conviction, release, and subsequent pardon preceded admission of his prior convictions as evidence by 11 years. However, appellant's subsequent history of a felony theft conviction in Texas in 1994 and two misdemeanor theft convictions in 1997 demonstrate that he has a recent propensity for running afoul of the law. This factor thus weighs toward admissibility of the prior convictions.

**3.  Similarity**

There is little danger a jury would find someone guilty of murder or manslaughter based on any similarity between the crimes of aggravated rape or a crime against nature and murder or manslaughter. The third factor thus favors admissibility.

**4.  Importance of Testimony**

Appellant's testimony was critical to his claim of self-defense. This factor weighs against admissibility in order to allow appellant to testify without having to be impeached by his two remote prior convictions.

**5.  Need to Impeach**

■ Because appellant's credibility was an issue of great importance to the guilt phase of the trial, the State's need to impeach the appellant's credibility was also great. While trial courts should normally allow the State a greater opportunity to impeach the defendant's testimony under

these circumstances, *United States v. Fountain*, 642 F.2d 1083, 1092 (7th Cir. 1981), the State here could have relied on appellant's three recent theft convictions to impeach him. These other prior convictions drastically lessened the State's need to impeach with the remote convictions for aggravated rape and a crime against nature. Therefore, the last factor weighs against admissibility.

### 6. Summary

When we weigh all the factors, we find the scale tipped severely against admissibility of the prior convictions for aggravated rape and a crime against nature. The State had ample evidence to impeach the defendant, in the form of one recent felony theft conviction and two recent misdemeanor theft convictions. The appellant did not attempt to portray himself as a peaceful and law abiding citizen. Nor did he open the door by claiming he had not been in trouble before. We fail to see the impeachment value of appellant's prior convictions for aggravated rape and a crime against nature. We do see, however, that the convictions had extremely high potential to prejudice.

We hold that the trial court abused its discretion in admitting appellant's prior convictions for aggravated rape and a crime against nature.

### C. Harm

■ Next we review the record to determine whether the trial court's error affected appellant's substantial rights. *See Hernandez*, 976 S.W.2d at 756; Tex.R.App. 44.2(b).[4] Appellant has the burden to establish harm. *See Merritt v. State*, 982 S.W.2d 634, 637 (Tex.App.—Houston [1st Dist.] 1998, pet. ref'd, untimely filed).

Appellant claims he was harmed because the trial court's error in admitting the two prejudicial prior convictions was compounded when the State improperly argued, over appellant's objection and without any relationship to his credibility, that appellant was a convicted rapist. Appellant emphasizes that the State used appellant's prior convictions as substantive evidence of guilt, *i.e.*, to show that he was guilty because he was a criminal, generally, rather than to impeach his credibility. Appellant relies on the jury's verdict of guilt for the lesser included offense of manslaughter as demonstrating that the evidence of appellant's guilt was not overwhelming. The State presents no argument on the issue of harm.

At the outset, we observe that our analysis of harm to appellant is limited to the guilt/innocence phase of trial. Appellant's prior convictions were proper subjects for consideration at the punishment phase. We also note that in charging the jury, the trial court instructed the jurors to limit consideration of extraneous convictions to passing on the *weight*[5] the jury might give appellant's testimony. The instruction appears as a single nondescript paragraph amid six paragraphs on page eight of a 10-page jury charge. We contrast this attempted limitation with the prosecutor's argument that appellant was a convicted thief and rapist. Although the appellant objected, the trial court overruled the objection, which effectively allowed the jury to disregard the instruction in the charge and to consider appellant's prior convictions without confining their impact to appellant's credibility. The State was thus allowed to use even the prior theft convictions, properly admitted to impeach appel-

---

4. "Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." Tex.R.App. P. 44.2(b).

5. The instruction should have used the term "credibility" instead of "weight." Not only is credibility the term used in rule 609, but there is a difference in meaning between the two terms that is often overlooked at significant cost to a clear understanding of a juror's task of weighing both the credibility of testimony and the weight to be given it. For example, a witness's testimony may be entitled to great weight, but only if it is credible, while a very credible witness may not have had the opportunity to see much of an event and thus not be entitled to much weight.

lant's credibility, beyond the proper scope of impeachment.

Under these conditions, we hold that appellant met his burden to establish that the erroneous admission of his prior convictions, for aggravated rape and a crime against nature, affected his substantial rights.

We sustain appellant's first point of error.

### Conclusion

Having found reversible error in appellant's first point of error, we need not address his second point of error, contending the trial court erred in submitting a jury instruction on provocation. We reverse the trial court's judgment and remand for a new trial for the lesser offense of manslaughter.