Opinion issued February 2, 2006



     











In The
Court of Appeals
For The
First District of Texas




NO. 01–04–00974–CR




CALVIN JEROME HIGH, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 179th District Court
Harris County, Texas
Trial Court Cause No. 937940



 
MEMORANDUM OPINION

          Calvin Jerome High, appellant, was charged with the murder of Kerri Sanders. 
See Tex. Pen. Code Ann. § 19.02 (Vernon 2003). For purposes of the punishment
phase, the State alleged that appellant had previously been convicted of manslaughter. 
See Tex. Pen. Code Ann. § 12.32 (Vernon 2003). Appellant pled not guilty to
murder and not true to the prior manslaughter conviction. A jury found appellant
guilty, found the prior conviction true, and assessed punishment at life in prison.
          In four points of error, appellant argues that (1) the evidence was legally and
factually insufficient to rebut the defensive theory of self-defense, (2) the trial court
erred in permitting the State to impeach appellant about his prior manslaughter
conviction, and (3) the trial court erred in overruling appellant’s motion for mistrial.
          We affirm.
Background
           On January 30, 2003, around 7:00 in the morning, appellant shot and killed
Kerri Sanders, complainant. Appellant’s trouble with Sanders centered around
Sanders’s girlfriend. According to appellant, Sanders wanted to turn his 16-to-17-year-old girlfriend into a prostitute. Appellant and Sanders had had a couple of
confrontations about this in the past. The night before the incident, Sanders came
looking for appellant because Sanders could not find his girlfriend. Appellant told
Sanders that he did not know where his girlfriend was. Appellant later went to
another house to sleep. At 5:00 in the morning, Sanders showed up at that house, still
looking for his girlfriend. Sanders told appellant that he wanted to apologize for his
earlier behavior, and Sanders held out his hand to shake. Appellant slapped Sanders’s
hand away, and Sanders punched appellant about three times in the face and on the
head.
          This much is not in dispute. However, what happened between this point and
the shooting, as well as the reasons for the shooting, were in dispute at appellant’s
trial. We present both versions.
A.      State’s Evidence
          According to appellant’s statement to an officer shortly after the shooting,
Sanders left appellant at the house. As Sanders left, his pistol dropped to the ground. 
Appellant, angered by Sanders’s assault, picked up the gun, eventually found Sanders
sitting with some others on a vacant lot, and shot him. This matched up with the
testimony of two eyewitnesses who saw appellant come up to the vacant lot, walk
straight to Sanders, and shoot him two to three times. Sanders fell over in his chair,
got up, and ran off with appellant chasing after him. The witnesses testified that they
heard appellant fire the gun about four more times.
          At the time of the shootings, there were two police cars in the immediate area. 
When they heard the shots, two police officers in one car, Officers Samuel Baker and
Michael Duncan, looked up, saw appellant chase after Sanders, and heard shots fired
after appellant disappeared from sight. The officers chased appellant and quickly
located him hiding behind a nearby house. The officer in the other car, Scott Adams,
heard the shots, but did not see any of the events. Flagged down by some of the
eyewitnesses, he was directed to where Sanders had finally fallen. Officer Adams
called for an ambulance, but Sanders died before the ambulance could arrive. 
Although between four to eight shots had been fired, the autopsy report reflected that
Sanders had been hit by two bullets, and died from a bullet wound to the neck.
          After he was arrested, appellant repeatedly asked Officers Baker and Duncan
if he had killed Sanders. When they told him he had killed Sanders, appellant
expressed pleasure with this and said he had meant to kill him. The officers
recovered the pistol appellant had fired and found there were no more bullets left in
the gun.
B.      Appellant’s Evidence
          According to appellant’s testimony at trial, after Sanders beat him, Sanders
made appellant come with him. Sanders pulled his gun out and told appellant that
they were going to find his girlfriend. They walked to the vacant lot so that Sanders
could talk to a friend of his. Once they got there, Sanders’s gun dropped to the
ground. Before Sanders sat down, appellant started easing towards the gun. Sanders
saw what appellant was doing, and they both lunged for the gun. Appellant reached
it first, and shot Sanders two times. He tried to shoot Sanders a third time, but the
gun jammed. After being shot, Sanders began to run off. Appellant saw Officers
Baker’s and Duncan’s car, and ran off as well. The officers soon found and arrested
him. Appellant testified that he might have asked about whether Sanders was dead,
but denied expressing pleasure in this or saying that he had meant to kill him.
Legal and Factual Sufficiency
          In his third and fourth points of error, appellant argues that the evidence was
legally and factually insufficient to rebut the defensive theory of self-defense. 
A.     Standard of Review
          When a defendant challenges the legal sufficiency of the evidence supporting
a fact finder’s rejection of a defense such as self-defense in a murder case, “we look
not to whether the State presented evidence which refuted appellant’s self-defense
testimony, but rather we determine whether after viewing all the evidence in the light
most favorable to the prosecution, any rational trier of fact would have found the
essential elements of murder beyond a reasonable doubt and also would have found
against appellant on the self-defense issue beyond a reasonable doubt.” Saxton v.
State, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991).
          When a defendant challenges the factual sufficiency of the evidence supporting
a fact finder’s rejection of a defense, we review all of the evidence in a neutral light
and ask whether the State’s evidence taken alone is too weak to support the finding
and whether the proof of guilt, although adequate if taken alone, is against the great
weight and preponderance of the evidence. Zuliani v. State, 97 S.W.3d 589, 595
(Tex. Crim. App. 2003). In conducting a factual sufficiency review, we must discuss
the evidence that appellant contends most undermines the jury’s verdict. See Sims v.
State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003). Unless the available record
clearly reveals that a different result is appropriate, we must defer to the jury’s
determination of what weight to give conflicting testimony because resolution of facts
often turns on evaluation of credibility and demeanor. See Johnson v. State, 23
S.W.3d 1, 8 (Tex. Crim. App. 2000).
B.      Analysis
          A person commits the offense of murder if he intentionally or knowingly
causes the death of an individual or intends to cause serious bodily injury and
commits an act clearly dangerous to human life. Tex. Pen. Code Ann. § 19.02(b)(1),
(2). Moreover, a person is justified in using deadly force against another (1) if he
would be justified in using force under section 9.31 of the Texas Penal Code; (2) if
a reasonable person in the actor’s situation would not have retreated; and (3) when
and to the degree “he reasonably believes” that the deadly force is immediately
necessary to protect himself against the other’s use or attempted use of unlawful
deadly force. Tex. Pen. Code Ann. § 9.32(a).
          A defendant has the burden of producing some evidence to support a claim of
self-defense. Zuliani, 97 S.W.3d at 594. Once the defendant produces such evidence,
the State then bears the burden of persuasion to disprove the raised defense. Id. The
burden of persuasion is not one that requires the production of evidence; rather, it
requires only that the State prove its case beyond a reasonable doubt. Id. When a fact
finder determines that the defendant is guilty, there is an implicit finding against the
defensive theory. Id. 
          At trial, the State produced evidence suggesting that appellant had obtained a
gun before going to the vacant lot, approached Sanders, and shot him immediately. 
Two eyewitnesses saw appellant approach alone, pull a gun from his pants, and shoot
Sanders. The arresting officers testified that appellant expressed pleasure in shooting
Sanders and that he told them he had meant to shoot Sanders. On cross-examination,
appellant admitted that his confession to an officer shortly after arrest was largely
consistent with the testimony of the witnesses testifying for the State. Appellant
argued that the reason he said what he said was because the officer refused to provide
him with the medical treatment that he needed until after the statement was given.



          Appellant’s explanation of events at trial was different. Appellant testified that
he was forced to go with Sanders to the vacant lot. The gun dropped once they were
at the vacant lot, appellant and Sanders lunged for the gun at the same time, and
appellant shot Sanders because Sanders was coming after him.
          Based on all of the evidence presented at trial, viewed in the light most
favorable to the verdict, we hold that a jury could have found the essential elements
of the offense of murder beyond a reasonable doubt and also could have found against
appellant on the issue of self-defense. In regard to the factual sufficiency of the
evidence, as appellant was the only witness testifying for his version of the events,
the jury’s decision to accept or reject appellant’s claim of self-defense ultimately
hinged on appellant’s credibility. Without appellant’s testimony, the evidence
supporting conviction was strong. After reviewing all of the evidence in a neutral
light, we hold that the State’s evidence, taken alone, is not too weak to support the
jury’s finding of guilt and rejection of appellant’s self-defense claim and that the
proof of appellant’s guilt is not against the great weight and preponderance of the
evidence. Accordingly, we hold that the evidence is legally and factually sufficient
to support the jury’s finding of guilt and rejection of appellant’s claim of self-defense.
          We overrule appellant’s third and fourth points of error.
Prior Conviction Impeachment
          In his first point of error, appellant argues that the trial court erred in allowing
the State to impeach him with his prior voluntary manslaughter conviction.
A.      Standard of Review
          We apply the abuse of discretion standard of review to a trial court’s
evidentiary rulings. Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); 
Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990). A trial court
must be given wide latitude to admit or exclude evidence as it sees fit. Theus v. State,
845 S.W.2d 874, 881 (Tex. Crim. App. 1992). As long as the trial court’s evidentiary
ruling was at least within the zone of reasonable disagreement, an appellate court may
not disturb it. Montgomery, 810 S.W.2d at 391.
B.      Analysis
          1.       Rule 609
          Under Rule 609 of the Texas Rules of Evidence, evidence of prior offenses is
admissible to attack a witness’s credibility when the prior offense was a felony or
involved moral turpitude. Tex. R. Evid. 609(a). However, before admitting evidence
of these prior offenses, the trial court must determine that the probative value of
admitting the evidence outweighs the prejudicial effect that the evidence will have
on the defendant. Id. 
          The balancing test changes for convictions where 10 years have passed since
the defendant was convicted and released from confinement. Tex. R. Evid. 609(b). 
While appellant was convicted in 1986, due to being put on parole and then having
parole later revoked, appellant was not released from confinement until 1998. This
was less than 10 years from the trial. Therefore, Rule 609(b) is not invoked.
          The burden of demonstrating that the probative value of evidence of prior
offenses outweighs its prejudicial effect is placed upon the proponent of the evidence. 
Theus, 845 S.W.2d at 880. Therefore, in the present case, the burden was on the
State.
          In Theus, the Court of Criminal Appeals set out a nonexclusive list of five
factors to assist trial courts when determining whether the proponent of Rule 609
evidence has satisfied his burden. 845 S.W.2d at 880. The Theus factors are (1) the
impeachment value of the prior offense; (2) the temporal proximity of the prior
offense relative to the charged offense and the defendant’s subsequent history; (3) the
similarity between the prior offense and the charged offense; (4) the importance of
the defendant’s testimony; and (5) the importance of the credibility issue. Id. 
                    a.       Impeachment Value
          When attempting to impeach a defendant by introducing evidence of prior
offenses, the issue is not whether the defendant committed the charged offense, but
whether the defendant is credible. See Tex. R. Evid. 609(a). Between prior offenses
involving violence and those involving deception, the former have a greater potential
to prejudice the defendant, while the latter are more probative of the defendant’s
credibility. See Theus, 845 S.W.2d at 881. Voluntary manslaughter is an offense
involving violence, and does not involve deception. Therefore, the first factor weighs
against admissibility. Deleon v. State, 126 S.W.3d 210, 215 (Tex. App.—Houston
[1st Dist.] 2003, pet. dism’d).
                    b.       Temporal Proximity and Subsequent History
           These factors will favor admissibility if the past crime is recent and the witness
has demonstrated a propensity for running afoul of the law. Theus, 845 S.W.2d at
881. Appellant was convicted of involuntary manslaughter 18 years earlier. 
However, he was placed on parole, violated his parole, went back to jail, and was not
released until 1998. Additionally, he was convicted of forgery in 2001. This more
recent violation removes “the taint of remoteness from the prior conviction.” Morris
v. State, 67 S.W.3d 257, 263 (Tex. App.—Houston [1st Dist.] 2001, pet. ref’d). Thus,
this factor weighs in favor of admissibility. Jackson v. State, 11 S.W.3d 336, 340
(Tex. App.—Houston [1st Dist.] 1999, pet. ref’d). 
                    c.       Similarity
           When a defendant’s prior offense and the charged offense are similar, a danger
arises that the jury will convict that defendant based on a perception of a pattern of
past conduct rather than based upon the facts of the charged offense. Therefore, when
this circumstance exists, the law disfavors admitting evidence of the prior offense. 
See Theus, 845 S.W.2d at 881. Here, appellant’s prior offenses and the charged
offense are similar; voluntary manslaughter is a lesser-included offense of murder. 
Schroeder v. State, 123 S.W.3d 398, 400 (Tex. Crim. App. 2003). Accordingly, this
factor weighs against admissibility. Pierre v. State, 2 S.W.3d 439, 443 (Tex. Crim.
App. 1999, pet. ref’d). 
                    d.       Importance of Defendant’s Testimony
          Appellant’s testimony was critical to his claim of self-defense. This factor
weighs against admissibility in order to allow appellant to testify without having to
be impeached by his prior conviction. Jackson, 11 S.W.3d at 340.
                    e.       Need to Impeach
          Because appellant’s credibility was an issue of great importance to the guilt
phase of the trial, the State’s need to impeach the appellant’s credibility was also
great. However, the State also had impeachment evidence of a prior conviction of
forgery, which is a crime involving deception and moral turpitude. This crime was
better suited for impeachment purposes, and lessened the State’s need to impeach
appellant with a prior voluntary manslaughter conviction. This factor neither weighs
for nor against admissibility. See id. at 340–41 (holding that three recent theft
convictions weighed against State’s need to impeach with remote convictions for
aggravated rape and crime against nature).
                    f.       Summary
          After weighing all the factors, we hold that the scale was tipped significantly
against admissibility of the prior conviction of involuntary manslaughter. Therefore,
we hold that the trial court abused its discretion by admitting evidence of the prior
convictions for impeachment under Rule 609.
          2.       Rule 404(b)
          While the evidence should have been excluded under Rule 609, the State’s
notice indicated that it also sought to admit it under Rule 404(b). Tex. R. Evid.
404(b). Rule 404(b) allows admissibility of extraneous offenses to prove intent or to
rebut a defensive theory. Deleon, 126 S.W.3d at 216. Because appellant’s main
defense was self-defense, evidence of his prior voluntary manslaughter conviction
was admissible under this rule to rebut appellant’s defense. Halliburton v. State, 528
S.W.2d 216, 218 (Tex. Crim. App. 1975) (holding that proof of prior violence can be
introduced to disprove defendant’s lack of intent to kill); Robinson v. State, 844
S.W.2d 925, 929 (Tex. App.—Houston [1st Dist.] 1992, no pet.) (holding that “when
the accused claims self-defense or accident, the State, in order to show the accused’s
intent, may show other violent acts where the defendant was an aggressor”).
          The trial court limited the admissibility of the evidence to the issue of
credibility and the jury instructions limited the jury’s consideration of the evidence
to that purpose. When evidence is admissible under Rule 404(b), the trial court
“should instruct the jury that the evidence is limited to whatever purpose the
proponent has persuaded him it serves.” Montgomery, 810 S.W.2d at 388. The
purpose for which the prior conviction was admissible under 404(b)—to rebut self-defense—encompasses the purpose that the jury was allowed to consider it under the
limiting instruction because appellant’s self-defense theory was presented through his
testimony.
          “If the trial judge’s decision is correct on any theory of law applicable to the
case, however, it will be sustained. This principle holds true even when the trial
judge gives the wrong reason for his decision, and is especially true with regard to
admission of evidence.” Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App.
1990). Because the evidence was admissible under Rule 404(b), the prior conviction
was admissible. We hold that the trial court did not abuse its discretion in admitting
the evidence.
          Even if the trial court did abuse its discretion, appellant does not argue harm
in his brief. The State, however, argues that the error was harmless. Because
admission of evidence is subject to non-constitutional error analysis, we evaluate
whether appellant’s substantial rights were affected. Tex. R. App. P. 44.2(b). A
substantial right is affected when the error had a substantial and injurious effect or
influence in determining the jury’s verdict. King v. State, 953 S.W.2d 266, 271 (Tex.
Crim. App. 1997). A criminal conviction should not be overturned for
non-constitutional error if the appellate court, after examining the record as a whole,
has fair assurance that the error did not influence the jury, or had but a slight effect. 
Johnson v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).
          The evidence at trial established that two people saw appellant approach
Sanders and shoot him without provocation. Two police officers saw appellant chase
Sanders while pointing a gun at him and heard shots fired after the two ran out of
sight. Appellant’s custodial confession corroborated the testimony of the other
witnesses. In light of this evidence, any error in the court’s admission of the previous
conviction would have had only a slight effect on the jury’s verdict.
          We overrule appellant’s first point of error.
Motion for Mistrial
          In his second point of error, appellant argues that the trial court erred in not
declaring a mistrial after it instructed the jury to disregard comments made by the
State during closing arguments for the punishment phase.

A.      Standard of Review
                     We review the trial court’s ruling on appellant’s motion for mistrial
under an abuse-of-discretion standard of review. Wead v. State, 129 S.W.3d 126, 129
(Tex. Crim. App. 2004); Ladd v. State, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). 
We uphold the trial court’s ruling if that ruling was within the zone of reasonable
disagreement. Wead, 129 S.W.3d at 129; Montgomery, 810 S.W.2d at 391. In
addition, an appellate court must review the trial court’s ruling in light of the
arguments that were before the court at the time it ruled. See Tex. R. App. P. 33.1;
Wead, 129 S.W.3d at 129; Dragoo v. State, 96 S.W.3d 308, 313 (Tex. Crim. App.
2003).
B.      Analysis
          This point of error also revolves around appellant’s prior voluntary
manslaughter conviction. During the State’s second closing argument, the following
exchange took place:
[The State]: Don’t you know back in 1986 you heard the defendant was
convicted of manslaughter. [Appellant’s counsel] is trying to say, well,
it’s just manslaughter, not a murder. I brought Mr. Phillips here today
to tell you about the facts of that case so you can see that it wasn’t just
a manslaughter. The State has agreed and Mr. High agreed. The
defendant agreed. I’ll reduce my case from a murder to a manslaughter.
 
[Appellant’s Counsel]: Judge, I object that he’s outside of the record and he
wasn’t here—

          [Trial Court]: I sustain to that.
 
[The State]: If I can make a reasonable presentation of the record I had based
on the terms of the plea agreement reduced the charge from murder to
a manslaughter. And you also make a reasonable inference from the
record. Part of the reasons for doing that is what Mr. Phillips
understood. [The complainant in manslaughter case] didn’t die for two
to three days. If you can make an inference in the record that because
he didn’t die for two to three days, the State felt that they showed the
charges.

          [Appellant’s Counsel]: Object. Outside of the record.

          [The State]: Reasonable inference.

          [Appellant’s Counsel]: Instruct to disregard.

          [Trial Court]: Instruction to disregard.

          [Appellant’s Counsel]: Respectfully ask for a mistrial.

          [Trial Court]: Denied. Proceed. No.
          Appellant argues that the State’s argument was outside of the record and the
argument was harmful because it created an incurable impression on the jury’s mind
that appellant had committed at least one deliberate murder in his past.
          Analysis of the propriety of denying a motion for mistrial involves most, if not
all, of the same considerations in a harm analysis. Hawkins v. State, 135 S.W.3d 72,
77 (Tex. Crim. App. 2004). “A mistrial is the trial court’s remedy for improper
conduct that is ‘so prejudicial that expenditure of further time and expense would be
wasteful and futile.’” Id. (quoting Ladd v. State, 3 S.W.3d 547, 567 (Tex. Crim. App.
1999)). In most situations, any harm is considered cured by the instruction to the jury
to disregard the improper argument. Hinojosa v. State, 4 S.W.3d 240, 253 (Tex.
Crim. App. 1999).
          A proper jury argument must fall within one of four general areas: (1)
summation of the evidence; (2) reasonable deduction from the evidence; (3) answer
to argument of opposing counsel; and (4) plea for law enforcement. Guidry v. State,
9 S.W.3d 133, 154 (Tex. Crim. App. 1999).
          The evidence established at trial showed that (1) the complainant did not die
for two to three days after being shot; (2) appellant was originally charged with
murder; (3) the State and appellant reached a plea bargain agreement to reduce the
charge from murder to voluntary manslaughter; and (4) appellant was convicted of
voluntary manslaughter. We hold that the State’s argument was not outside of the
record.
          We overrule appellant’s second point of error.

Conclusion
          We affirm the judgment of the trial court.
 
                                                                        Laura Carter Higley
                                                                        Justice

Panel consists of Justices Taft, Higley, and Bland.

Do not publish. See Tex. R. App. P. 47.2(b).