

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-18-00009-CV

IN THE INTEREST OF H.M.J., A CHILD

On Appeal from the 6th District Court
Lamar County, Texas
Trial Court No. 86319

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

Baby Hanna was born addicted to methamphetamine and, immediately upon her birth, was placed into foster care.[1] On the day after her birth, the Department of Family and Protective Services (Department) filed a petition to terminate Amber Summer's and Frank Jacob's parental rights to the child. After an evidentiary hearing, the trial court granted the Department's petition and terminated the parental rights of both parents. Summer and Jacob have each appealed.

Summer is represented on appeal by court-appointed counsel who has filed a brief in accord with the requirements of *Anders v. California*, 386 U.S. 738 (1967). Because our independent review of the appellate record establishes that counsel is correct in determining that Summer's appeal is frivolous, we affirm the trial court's termination of her parental rights to Hanna.

In his appeal, Jacob argues that the evidence was legally and factually insufficient to support the trial court's decision (1) that grounds existed under Section 161.001(b)(1) of the Texas Family Code to terminate his parental rights and (2) to not appoint him as Hanna's managing conservator. Because we find the evidence both legally and factually sufficient to support the trial court's finding under Ground E of Section 161.001(b)(1), we affirm the trial court's termination of Jacob's parental rights to Hanna and its conservatorship order.

## I. Factual and Procedural Background

Annie Downs, the Department's caseworker, testified that Hanna suffered underdeveloped lungs and other medical infirmities as a result of Summer's prenatal drug abuse. At trial, the

---

[1]In this opinion, we refer to the child and her parents by pseudonyms in order to protect the child's identity. *See* TEX. R. APP. P. 9.8.

twenty-nine-year-old Jacob admitted that he had been using methamphetamine since he was seventeen. While Summer was pregnant, Jacob was arrested on September 16, 2016, for possession of methamphetamine. During her testimony, Downs said Summer claimed to her that Jacob used drugs while in her presence and that she admitted to using methamphetamine intravenously while pregnant with Hanna. Downs also stated that Child Protective Services (CPS) records revealed that Summer had prior history of using drugs while pregnant with other children. According to Andy Garner, an investigator for CPS, Summer reported using drugs at least three times per week. Hanna was immediately removed from Summer's and Jacob's care on the day she was born, in March 2017, and was placed in a "foster-to-adopt home."[2]

Garner testified that Jacob refused to take a hair-follicle test following the child's removal. On April 12, Jacob had a scheduled visitation with Hanna, but tested positive for amphetamine and methamphetamine after Downs suspected him of being high on drugs.[3] On April 19, the trial court ordered Summer and Jacob to complete a psychological evaluation, counseling sessions, parenting classes, a drug and alcohol assessment, and drug treatment, and also mandated compliance with all of the provisions of the Department's family service plan. Soon thereafter, Jacob was arrested and, on April 27, 2017, was convicted of possession of a prohibited weapon. Jacob signed his family service plan in May 2017 while incarcerated. Downs testified that Summer and Jacob both failed to complete any portion of their respective family service plans.[4]

---

[2]Jacob was listed as Hanna's father on her birth certificate and he readily admitted paternity at trial.

[3]Downs testified that Summer also tested positive for drugs during the pendency of the case.

[4]Downs stated that the Department does not provide services to parents in jail and that she was unaware of what services may have been offered to Jacob.

Jacob cited his incarceration as the reason for his inability to complete the family service plan. He testified that he had posted a bond following his September 2016 arrest, but was subsequently arrested on a bond violation in January 2017 after he was found with brass knuckles. Jacob stated that he remained in jail after his April 2017 conviction and, on August 18, 2017, was also convicted of the September 2016 possession of methamphetamine offense. After the State's repeat-offender allegations were found true, Jacob was sentenced to five years' imprisonment.

Jacob admitted that he knew Summer was pregnant in the second month of her pregnancy. Although Jacob used methamphetamine intravenously while Summer was pregnant, he denied using the drug with her during that time. He testified that they were not living together and were not in a romantic relationship.[5] Jacob stated, "When we got together she got pregnant, she wouldn't quit doing drugs. I tried to keep her from doing drugs. To keep from going to jail I had to get away from her." Jacob informed the trial court that he would occasionally visit Summer to check on her and deliver food. Although he admitted to using drugs during the pendency of the case before his scheduled visit with Hanna, Jacob claimed that he had turned over a new leaf and had quit his addiction. During cross-examination, Jacob testified that (due to her continued drug use) he knew Summer would be unable to care for Hanna, but nevertheless, continued his drug use until his incarceration.

In light of the facts of this case, Downs testified that termination of Summer's and Jacob's parental rights was in Hanna's best interests. According to Downs, Hanna was bonded with her foster family, who had provided for her emotional and physical needs since her birth and wanted

[5]Summer and Jacob were never married.

4

to adopt her. Downs said that while Hanna had no bond with Jacob and Summer had provided no support to Hanna, the foster family would be willing and able to provide for the child's needs in the future. Sharon Eubanks, the Court Appointed Special Advocate, also testified that termination of parental rights was in Hanna's best interests and that the foster family had provided the eleven-month-old with a safe and stable environment.

Jacob testified that he loved Hanna and wanted to provide for her. Although he admitted that he was unable to care for the child due to his incarceration, he opined that he would be freed in October 2018. Jacob added that he was enrolled in parenting classes and, because he only had an eighth-grade education, was working on obtaining his G.E.D. Yet, Jacob acknowledged that Hanna was "in a great position" with her foster family and considered their home a good one. Faced with the hypothetical position posed that his incarceration could last for more than a few years, Jacob did not believe that it would then be in Hanna's best interest to remove her from her foster family. His wish was for Hanna to be happy and that her wants and needs were properly tended.

After hearing the evidence,[6] the trial court terminated Summer's and Jacob's parental rights to Hanna. With respect to Jacob, the trial court found that he: (1) voluntarily left Hanna alone or in the possession of another without providing adequate support for her and remained away for a period of at least six months; (2) knowingly placed or knowingly allowed Hanna to remain in conditions or surroundings which endangered her physical or emotional well-being; (3) engaged in conduct or knowingly placed Hanna with persons who engaged in conduct which endangered

---

[6]Summer did not appear for trial.

her physical or emotional well-being; (4) constructively abandoned Hanna, who had been in the temporary managing conservatorship of the Department for not less than six months, after (a) the Department made reasonable efforts to return Hanna, (b) he did not visit or maintain significant contact with the child, and (c) he demonstrated an inability to provide the child with a safe environment; (5) failed to comply with the provisions of a court order requiring the completion of a family service plan, which was necessary for him to obtain Hanna's return from the Department, which had temporary managing conservatorship of Hanna for not less than nine months as a result of her removal for abuse or neglect; and (6) knowingly engaged in criminal conduct that had resulted in his conviction of an offense and confinement or imprisonment and inability to care for the child for not less than two years from the date of filing of the Department's petition. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(C), (D), (E), (N), (O), (Q) (West Supp. 2017).

## II.    The Appellate Record Establishes that Summer's Appeal Is Frivolous

"The procedures set forth in *Anders* are applicable to an appeal from a trial court's order terminating parental rights when an appellant's appointed appellate counsel concludes that there are no non-frivolous issues to assert on appeal." *In re G.P.*, 501 S.W.3d 252, 253 (Tex. App.—Texarkana 2016, no pet.) (citing *In re P.M.*, 520 S.W.3d 24, 27 n.10 (Tex. 2016) (per curiam)). The *Anders* brief filed by Summer's counsel presents a professional evaluation of the record demonstrating why there are no arguable grounds for reversal.  Counsel has established that he provided Summer with copies of the brief and the appellate record, and has also notified Summer of her right to file a pro se response.  By letter dated April 17, 2018, this Court informed Summer

6

that any pro se response was due on or before May 7, 2018. Summer did not exercise her right to file a pro se response.

Court-appointed counsel's brief meets the requirements of *Anders* by providing a professional evaluation of the record and stating why there are no arguable grounds for reversal on appeal. *See Anders*, 386 U.S. at 744. Having thoroughly reviewed the record and counsel's brief, we agree with counsel's assessment that the appeal is frivolous and without merit. We find nothing in the record that could arguably support the appeal. *See id.* (emphasizing that the reviewing court—and not counsel—determines, after full examination of proceedings, whether the appeal is wholly frivolous). Accordingly, we affirm the trial court's final order terminating Summer's parental rights to Hanna.

However, we deny counsel's motion to withdraw. In the parental-rights termination context, "counsel's belief that the client has no grounds to seek further review from the court of appeals' decision" is not "good cause" sufficient to justify counsel's withdrawal. *In re P.M.*, 520 S.W.3d 24, 27 (Tex. 2016) (per curiam). Instead, counsel's duty to his client extends through the exhaustion or waiver of "all appeals in relation to any final order terminating parental rights." TEX. FAM. CODE ANN. § 107.016(3)(B) (West Supp. 2017). If Summer wishes to pursue an appeal to the Supreme Court of Texas, "appointed counsel's obligations can be satisfied by filing a petition for review that satisfies the standards for an *Anders* brief." *P.M.*, 520 S.W.3d at 27–28.

### III. Legally and Factually Sufficient Evidence Supports Termination of Jacob's Parental Rights

#### A. Standard of Review

"The natural right existing between parents and their children is of constitutional dimensions." *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Indeed, parents have a fundamental right to make decisions concerning "the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 65 (2000). "Because the termination of parental rights implicates fundamental interests, a higher standard of proof—clear and convincing evidence—is required at trial." *In re A.B.*, 437 S.W.3d 498, 502 (Tex. 2014). This Court is therefore required to "engage in an exacting review of the entire record to determine if the evidence is . . . sufficient to support the termination of parental rights." *Id.* at 500. "[I]nvoluntary termination statutes are strictly construed in favor of the parent." *In re S.K.A.*, 236 S.W.3d 875, 900 (Tex. App.—Texarkana 2007, pet. denied) (quoting *Holick*, 685 S.W.2d at 20).

In order to terminate parental rights, the trial court must find, by clear and convincing evidence, that the parent has engaged in at least one statutory ground for termination and that termination is in the child's best interest. TEX. FAM. CODE ANN. § 161.001 (West Supp. 2017); *In re E.N.C.*, 384 S.W.3d 796, 798 (Tex. 2012). "Clear and convincing evidence" is that "degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2014); *see In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009). This standard of proof necessarily affects our review of the evidence.

In our review of factual sufficiency, we give due consideration to evidence the jury could have reasonably found to be clear and convincing. *In re H.R.M.*, 209 S.W.3d 105, 109 (Tex. 2006) (per curiam). We consider only that evidence the fact-finder reasonably could have found to be clear and convincing and determine "whether the evidence is such that a fact[-]finder could reasonably form a firm belief or conviction about the truth of the . . . allegations." *Id.* (quoting *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002)); *In re J.F.C.*, 96 S.W.3d 256, 264, 266 (Tex. 2002). "If, in light of the entire record, the disputed evidence that a reasonable fact-finder could not have credited in favor of the finding is so significant that a fact-finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *J.F.C.*, 96 S.W.3d at 266. "[I]n making this determination," we must undertake "an exacting review of the entire record with a healthy regard for the constitutional interests at stake." *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (quoting *C.H.*, 89 S.W.3d at 26).

Despite the profound constitutional interests at stake in a proceeding to terminate parental rights, "the rights of natural parents are not absolute; protection of the child is paramount." *In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003) (quoting *In re J.W.T.*, 872 S.W.2d 189, 195 (Tex. 1994)); *see In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003). "A child's emotional and physical interests must not be sacrificed merely to preserve parental rights." *In re C.A.J.*, 459 S.W.3d 175, 179 (Tex. App.—Texarkana 2015, no pet.) (citing *C.H.*, 89 S.W.3d at 26).

"Only one predicate finding under Section 161.001[b](1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." *In re O.R.F.*, 417 S.W.3d 24, 37 (Tex. App.—Texarkana 2013, pet. denied) (quoting *A.V.*, 113

S.W.3d at 362); *In re K.W.*, 335 S.W.3d 767, 769 (Tex. App.—Texarkana 2011, no pet.)); *see In re N.R.*, 101 S.W.3d 771, 775 (Tex. App.—Texarkana 2003, no pet.). When the trial court finds multiple predicate grounds, we will affirm if any one ground is supported by sufficient evidence. *In re K.W.*, 335 S.W.3d 767, 769 (Tex. App.—Texarkana 2011, no pet.).

### B.      The Evidence Supports the Ground (E) Finding

Among other things, the trial court found that Jacob knowingly engaged in conduct or knowingly placed Hanna with persons who engaged in conduct which endangered Hanna's physical or emotional well-being.[7] *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(E). We review this finding for legally and factually sufficient evidence.

Ground E "refers only to the parent's conduct, as evidenced not only by the parent's acts, but also by the parent's omissions or failures to act." *N.S.G.*, 235 S.W.3d at 366–67 (quoting *In re S.K.*, 198 S.W.3d 899, 902 (Tex. App.—Dallas 2006, pet. denied)). "To be relevant, the conduct does not have to have been directed at the child, nor must actual harm result to the child from the conduct." *In re Z.M.*, 456 S.W.3d 677, 686 (Tex. App.—Texarkana 2015, no pet.) (quoting *Perez v. Tex. Dep't of Protective & Regulatory Servs.*, 148 S.W.3d 427, 436 (Tex. App.—El Paso 2004, no pet.)); *see E.N.C.*, 384 S.W.3d at 803; *N.S.G.*, 235 S.W.3d at 367. Under Ground E, it is sufficient that the child's well-being is jeopardized or exposed to loss or injury. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *N.S.G.*, 235 S.W.3d at 367.

---

[7]"'Endanger' means . . . to expose to loss or injury . . . ." *In re N.S.G.*, 235 S.W.3d 358, 367 (Tex. App.—Texarkana 2007, no pet.) (quoting *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987) (citations omitted)).

Termination under Ground E "must be based on more than a single act or omission." Instead, "a voluntary, deliberate, and conscious course of conduct by the parent is required." *Perez v. Tex. Dep't of Protective & Regulatory Servs.*, 148 S.W.3d 427, 436 (Tex. App.—El Paso 2004, no pet.) (citing *In re K.M.M.*, 993 S.W.2d 225, 228 (Tex. App.—Eastland 1999, no pet.)); *see Boyd*, 727 S.W.2d at 533; *N.S.G.*, 235 S.W.3d at 366–67.

Here, Jacob admitted that he had used methamphetamine since he was seventeen years old. Although he knew that Summer was pregnant with his child and that her drug use would prevent her from caring for the baby, Jacob continued his drug use instead of making any effort to quit his addiction. This decision jeopardized the chances that Hanna would be born to a parent who could care for her physical and emotional needs. During Summer's pregnancy, Jacob was arrested for possession of methamphetamine.[8] While the case was pending, Jacob's drug use ultimately led to his incarceration and a sentence of five years' imprisonment.

"Because it exposes the child to the possibility that the parent may be impaired or imprisoned, illegal drug use may support termination under" Ground E. *In re A.L.*, No. 06-14-00050-CV, 2014 WL 5204888, at *7 (Tex. App.—Texarkana Oct. 8, 2014, no pet.) (mem. op.) (quoting *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied)). "Drug use and its effect on a parent's life and his ability to parent may establish an endangering course of conduct." *In re J.L.B.*, 349 S.W.3d 836, 848 (Tex. App.—Texarkana 2011, no pet.) (quoting *N.S.G.*, 235 S.W.3d at 368); *see In re J.O.A.*, 283

---

[8]In 2009, Jacob was convicted of assault causing bodily injury. In 2012, he pled guilty to and was found guilty of the offenses of felon in possession of a firearm and deadly conduct by discharging a firearm and was placed on community supervision for four years for each offense.

11

S.W.3d 336, 345 n.4 (Tex. 2009) ("Evidence of illegal drug use or alcohol abuse by a parent is often cited as conduct which will support an affirmative finding that the parent has engaged in a course of conduct which has the effect of endangering the child.") (quoting *In re S.N.*, 272 S.W.3d 45, 52 (Tex. App.—Waco 2008, no pet.)).

Additionally, even after the Department had removed Hanna, a drug test revealed that Jacob had continued using methamphetamine. "A parent's failure to remain drug-free while under the Department's supervision will support a finding of endangering conduct under subsection (E) even if there is no direct evidence that the parent's drug use actually injured the child." *In re J.A.W.*, No. 02-08-215-CV, 2009 WL 579287, at *4 (Tex. App.—Fort Worth Mar. 5, 2009, no pet.) (per curiam) (mem. op.) (citing *Vasquez v. Tex. Dep't of Protective & Regulatory Servs.*, 190 S.W.3d 189, 196 (Tex. App.—Houston [1st Dist.] 2005, pet. denied)).

Moreover, Jacob's omission and failures to act also supported the trial court's Ground E finding. "Endangerment can . . . include knowledge that a child's mother abused drugs." *In re J.W.S.*, No. 06-14-00018-CV, 2014 WL 3013352, at *6 (Tex. App.—Texarkana July 2, 2014, no pet.) (mem. op.) (quoting *In re U.P.*, 105 S.W.3d 222, 234 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (citing *In re M.J.M.L.*, 31 S.W.3d 347, 351–52 (Tex. App.—San Antonio 2000, pet. denied)). Jacob admitted that he was well aware of Summer's illegal drug use during her pregnancy with Hanna. Likewise, he was aware that her drug use could have profound effects on Hanna's well-being. Yet, he failed to report Summer to CPS or to the police and did not ensure that she received any substance abuse treatment. As a result, Hanna was born addicted to methamphetamine and suffered physical ailments in addition to the effects of withdrawal. A

father's failure to attempt to protect his unborn child from the mother's drug use during her pregnancy constitutes an omission that is both legally and factually sufficient to support a trial court's finding that the father had endangered the child. *Id.* (citing *In re S.K.A.*, No. 10-08-00347–CV, 2009 WL 2645027, at *9 (Tex. App.—Waco Aug. 19, 2009, no pet.) (mem. op.)).

After reviewing all of the evidence in both the light most favorable to the findings and in a neutral light, we find that the trial court could have reasonably formed a firm belief or conviction that Jacob knowingly engaged in conduct which endangered Hanna's physical or emotional well-being. Therefore, we find the evidence legally and factually sufficient to support the termination of Jacob's parental rights to Hanna.

## C.  The Trial Court Did Not Abuse Its Discretion in Declining to Appoint Jacob as Managing Conservator

In relevant part, Section 153.131 of the Texas Family Code reads:

> (a)    . . . [U]nless the court finds that appointment of the parent or parents would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development, a parent shall be appointed sole managing conservator or both parents shall be appointed as joint managing conservators of the child.

> (b)    It is a rebuttable presumption that the appointment of the parents of a child as joint managing conservators is in the best interest of the child. A finding of a history of family violence involving the parents of a child removes the presumption under this subsection.

TEX. FAM. CODE ANN. § 153.131 (West 2014). Here, the Department prayed for managing conservatorship under Section 153.131, and the trial court found that appointment of Jacob would significantly impair Hanna's physical health or emotional development.

13

"Conservatorship determinations . . . are subject to review only for abuse of discretion, and may be reversed only if the decision is arbitrary and unreasonable." *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007) (finding that a parent is required to independently challenge a trial court's conservatorship finding under Section 153.131 to obtain reversal of the conservatorship appointment in cases where a trial court's termination of the parent-child relationship based on Section 161.001 is reversed).

Where, as here, an appellate court overrules a challenge to the order terminating a parent's rights, "the trial court's appointment of the Department as sole managing conservator may be considered a 'consequence of the termination pursuant to Family Code section 161.207,'" *In re J.R.W.*, No. 14-12-00850-CV, 2013 WL 507325, at *12 (Tex. App.—Houston [14th Dist.] Feb. 12, 2013, pet. denied) (mem. op.) (quoting *In re A.S.*, 261 S.W.3d 76, 92 (Tex. App.—Houston [14th Dist.] 2008, pet. denied), which requires the trial court to appoint "a suitable, competent adult, Department of Family and Protective Services, or a licensed child-placing agency as managing conservator of the child," TEX. FAM. CODE ANN. § 161.207(a) (West Supp. 2017). *See In re N.T.*, 474 S.W.3d 465, 481 (Tex. App.—Dallas 2015, no pet.); *In re I.R.K.-N.*, No. 10-13-00455-CV, 2014 WL 2069281, at *8 (Tex. App.—Waco May 15, 2014, pet. denied) (mem. op.).

Jacob has a lengthy history of drug abuse which has resulted in his current incarceration. He provides no argument that he "is a 'suitable, competent adult' as contemplated by section 161.207(a) or that the presumption in section 153.131(a) applies to a parent whose parental rights

14

have been terminated under Chapter 161."[9]  *J.R.W.*, 2013 WL 507325, at *12 (quoting Tex. Fam. Code Ann. § 161.207(a) (West 2008)).

In his appeal of the trial court's judgment, Jacob did not challenge the court's finding that termination of his parental rights was in Hanna's best interests.  Moreover, "[a] trial court does not abuse its discretion in appointing the Department as conservator of the children where the evidence is sufficient to support termination of parental rights."  *In re S.R.*, 452 S.W.3d 351, 359 n.3 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *see Pruitt v. Tex. Dep't of Family & Protective Servs.*, No. 03-10-00089-CV, 2010 WL 5463861, at *9 (Tex. App.—Austin Dec. 23, 2010, no pet.) (mem. op.).  Accordingly, we overrule Jacob's last point of error.

## IV.    Conclusion

We affirm the trial court's judgment.

Bailey C. Moseley
Justice

Date Submitted:     June 13, 2018
Date Decided:       June 19, 2018

---

[9]"[W]hen a trial court terminates the parent-child relationship, the court also 'divests the parent and the child of all legal rights and duties with respect to each other.'"  *J.R.W.*, 2013 WL 507325, at *12 (citing Tex. Fam. Code Ann. § 161.206(b) (West 2008)).