TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-12-00006-CR






Jamie Edward Johnson, Appellant


v.


The State of Texas, Appellee






FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL DISTRICT

NO. 09-1868-K368, THE HONORABLE BURT CARNES, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


 A jury convicted Jamie Edward Johnson of possession of a controlled substance,
methamphetamine, in an amount of less than one gram. See Tex. Health & Safety Code Ann.
§§ 481.102, 481.115 (West 2010). The jury found the enhancement paragraphs of the indictment,
alleging three prior felony convictions, to be true and assessed his punishment at confinement for
seven and one-half years in the Institutional Division of the Texas Department of Criminal Justice
and, in addition, assessed a $2,000 fine. See Tex. Penal Code Ann. §§ 12.34 (West 2011), 12.42(a)
(West Supp. 2010). Johnson appeals, raising nine points of error. (1) We affirm.


BACKGROUND

 On December 15, 2009, Michelle Christensen, a Cedar Park Police Detective, was
off duty working an extra job as security at a hockey game at the Cedar Park Event Center. Before
the game, her attention was drawn to Johnson while he was waiting in line for the gates to open. She
noticed his "fidgety" behavior and, based on her training in drug recognition, believed him to be
under the influence of a CNS (central nervous system) stimulant. During the game, Johnson sat in
the section Detective Christensen was assigned to monitor. She observed him exhibit "anxious
behavior"--repeatedly standing up and sitting back down, leaning against the railing, taking off his
hat and putting it back on, and looking around "nervously." When Johnson left his seat during the
intermission between the first two periods of the game, she followed him and saw him enter the
men's bathroom. While Johnson was in the bathroom, Christensen conferred with her husband,
Cedar Park Police Officer Joseph Christensen, who was also working security at the game, about
Johnson's behavior.

 When Johnson exited the bathroom, he was repeatedly blowing his nose and sniffling. 
After returning to his seat, the officers observed him putting paper towels up his nose. During the
second period, he continued to exhibit behaviors that both officers considered consistent with drug
use--looking around nervously, repeatedly standing up and sitting down in an agitated manner,
repeatedly removing and replacing his hat, and continually grinding his teeth. After the second
period, Johnson again went to the bathroom during the intermission. This time Officer Christensen
followed him into the bathroom. The officer heard sniffing noises--loud inhales through the nose,
the type of sniffing he associated with the snorting of a drug--coming from Johnson's stall. When
Johnson left the bathroom, Detective Christensen and Officer Christensen approached him and asked
to speak with him. He agreed and they went outside.

 Once outside, Officer Christensen asked Johnson if he had any narcotics or weapons
in his possession. Johnson said he did not. Officer Christenson explained to Johnson that he
believed Johnson was under the influence of a narcotic and asked for consent to search his person. 
Johnson consented. As Officer Christensen searched him, Johnson told the officers that he had
methamphetamine in a napkin. When confronted with the fact that most people who possess
methamphetamine do not carry it in a napkin, Johnson admitted that he had some methamphetamine
in a baggie in his wallet earlier but that it was gone. Officer Christenson removed the wallet and
gave it to Detective Christensen. Inside the wallet, she recovered a small plastic baggie that
appeared to have methamphetamine residue in it. Johnson was then arrested for possession of a
controlled substance. Subsequent lab testing confirmed that the trace amount of substance in the
baggie was methamphetamine.


DISCUSSION On appeal, Johnson raises nine points of error complaining of error during jury
selection, evidentiary insufficiency, the erroneous admission of evidence during the guilt-innocence
phase, improper jury argument, and cruel and unusual punishment. For the reasons set out below,
we overrule his points of error and affirm the conviction and sentence.


Jury Selection

 In two points of error, Johnson complains about error during jury selection. In his
second point of error, he asserts that the State asked multiple improper commitment questions during
the course of voir dire. Specifically, he contends the prosecutor's questions relating to the difference
between possession and ownership and questions attempting to discern how prospective jurors felt
about convicting for possession of only residue amounts of a controlled substance were improper
commitment questions. Johnson acknowledges that he failed to object to any purportedly improper
questions during voir dire at the time they were asked. He argues, however, that the complained-of
questions rose to the level of fundamental error and thus no objection was required.

 In his ninth point of error, Johnson argues that comments by a venire member during
voir dire violated his due-process rights. He maintains that a prospective juror tainted the entire
panel because the prospective juror indicated, in response to defense counsel's questioning about the
presumption of innocence, that he could not presume Johnson innocent because of his body language
and demeanor. Johnson again concedes that he failed to object to the venire member's comments
at the time they were made but again asserts that no objection was required because the error rose
to the level of fundamental error.

 Preservation of error is a systemic requirement on appeal. Ford v. State,
305 S.W.3d 530, 532 (Tex. Crim. App. 2009); Haley v. State, 173 S.W.3d 510, 515 (Tex.
Crim. App. 2005). Normally, a reviewing court should not address the merits of an issue that has
not been preserved for appeal. Wilson v. State, 311 S.W.3d 452, 473-74 (Tex. Crim. App. 2010)
(citing Ford, 305 S.W.3d at 532). To preserve a complaint for appellate review, a party must have
presented a specific and timely request, motion, or objection to the trial court and, further, must have
obtained an adverse ruling. Tex. R. App. P. 33.1(a); Pena v. State, 353 S.W.3d 797, 807 (Tex. Crim.
App. 2011); Peavey v. State, 248 S.W.3d 455, 470 (Tex. App.--Austin 2008, pet. ref'd). Most
complaints are subject to forfeiture by failure to comply with Rule 33.1(a) of the Rules of Appellate
Procedure. Mendez v. State, 138 S.W.3d 334, 342 (Tex. Crim. App. 2004). Even constitutional
rights--including the right of due process and due course of law--may be waived if the proper
request, objection, or motion is not asserted in the trial court. Saldano v. State, 70 S.W.3d 873,
886-87 (Tex. Crim. App. 2002); see Mendez, 138 S.W.3d at 342.

 The preservation requirements of Rule 33.1 do not apply, however, to rights which
are waivable only by plain and affirmative statement, nor to absolute systemic requirements, the
violation of which may be raised for the first time on appeal. State v. Dunbar, 297 S.W.3d 777, 780
(Tex. Crim. App. 2009). Systemic requirements--also known as absolute requirements or
prohibitions--are laws that a trial court has a duty to follow even if the parties wish otherwise. 
Mendez, 138 S.W.3d at 340. Examples of systemic requirements include jurisdiction of the person
and jurisdiction of the subject matter. Saldano, 70 S.W.3d at 888. "Waivable only" rights, such as
the right to trial by jury, are "rights of litigants which must be implemented by the system unless
expressly waived." Mendez, 138 S.W.3d at 340; Saldano, 70 S.W.3d at 888.

 Johnson argues that because due process requires an impartial jury, no objection is
required to preserve the complained-of errors in jury selection. However, Johnson does not direct
us to any authority, and we have found none, characterizing improper voir dire questions or a juror's
expression of his personal opinion as systemic, waivable-only, or otherwise "fundamental" error. (2) 
Johnson confuses constitutional rights with absolute systemic requirements or fundamental error. 
Numerous constitutional rights, including those that implicate a defendant's due-process rights,
may be forfeited for purposes of appellate review unless properly preserved. Anderson v. State,
301 S.W.3d 276, 279-80 (Tex. Crim. App. 2009) (rejecting "due process" exception to error
preservation requirement).

 Johnson's failure to object at trial failed to preserve error relating to any alleged
improper commitment questions. Further, because Johnson failed to object to the complained-of
juror statement, he failed to preserve error relating to his due-process complaint that the juror's
comment tainted the venire panel. Accordingly, we overrule his second and ninth points of error.


Admission of Prior Convictions

 Johnson argues in his first point of error that the trial court erred in admitting
evidence of his prior criminal history during the guilt-innocence phase of trial because the probative
value of this evidence was substantially outweighed by the prejudicial effect. He maintains that the
trial court should have excluded evidence of the following prior convictions: his 2007 state jail
felony conviction for possession of a controlled substance, his 2002 state jail felony conviction for
possession of a controlled substance, his 2008 misdemeanor conviction for burglary of a motor
vehicle, and his 2008 misdemeanor conviction for family violence assault. (3)

 In his brief, Johnson argues that the admission of the complained-of prior convictions
violated both Rules 403 and 609 of the Texas Rules of Evidence. At trial, however, Johnson
objected to the admission of this evidence only under Rule 403. In fact, defense counsel explicitly
stated that he was not objecting to the admission of this evidence under Rule 609--that is, he was
not complaining that the evidence was improper impeachment, only that it was more prejudicial than
probative under Rule 403. Therefore, Johnson failed to preserve his Rule 609 complaint for
appellate review. See Tex. R. App. P. 33.1(a); Pena, 353 S.W.3d at 807; Peavey, 248 S.W.3d at 470. 
Accordingly, we review only his complaint that the trial court erred by admitting the complained-of
prior convictions in violation of Rule 403. (4)

 We review a trial court's decision to admit or exclude evidence--including its
determination as to whether the probative value of evidence was substantially outweighed by its
prejudicial effect--under an abuse of discretion standard. Martinez v. State, 327 S.W.3d 727, 736
(Tex. Crim. App. 2010), cert. denied, 131 S.Ct. 2966 (2011). A trial court abuses its discretion
in this regard only if its determination "lies outside the zone of reasonable disagreement." Id.;
Casey v. State, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007). A trial court is afforded wide
discretion in deciding whether to admit evidence of a defendant's prior conviction. Theus v. State,
845 S.W.2d 874, 881 (Tex. Crim. App. 1992).

 "Although relevant, evidence may be excluded if its probative value is substantially
outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by
considerations of undue delay, or needless presentation of cumulative evidence." Tex. R. Evid. 403.
When undertaking a Rule 403 analysis, a trial court must balance 


 (1) the inherent probative force of the proffered item of evidence along with (2) the
proponent's need for that evidence against (3) any tendency of the evidence to
suggest decision on an improper basis, (4) any tendency of the evidence to confuse
or distract the jury from the main issues, (5) any tendency of the evidence to be given
undue weight by a jury that has not been equipped to evaluate the probative force of
the evidence, and (6) the likelihood that presentation of the evidence will consume
an inordinate amount of time or merely repeat evidence already admitted.



Gigliobianco v. State, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006). Rule 403 favors the
admission of relevant evidence and carries a presumption that relevant evidence will be more
probative than prejudicial. Martinez, 327 S.W.3d at 737; Young v. State, 283 S.W.3d 854, 876 (Tex.
Crim. App. 2009). Further, Rule 403 does not require exclusion of evidence simply because it
creates prejudice; the prejudice must be "unfair." Martinez, 327 S.W.3d at 737; State v. Mechler,
153 S.W.3d 435, 440 (Tex. Crim. App. 2005). The rule envisions exclusion of evidence only when
there is a clear disparity between the degree of prejudice of the offered evidence and its probative
value. Gayton v. State, 331 S.W.3d 218, 227 (Tex. App.--Austin 2011, pet. ref'd) (citing Hammer
v. State, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009)).


Probative Value

 The Texas Rules of Evidence allow for impeachment of a witness's credibility with
evidence of a conviction for a felony or a crime of moral turpitude if the probative value of admitting
the evidence outweighs its prejudicial effect. Tex. R. Evid. 609(a). Johnson's two convictions for
possession of a controlled substance were convictions for felony offenses. See Tex. Health & Safety
Code Ann. § 481.115(a), (b) (West 2010). The misdemeanor family violence assault conviction
involved a crime of moral turpitude. See Jackson v. State, 50 S.W.3d 579, 592 (Tex. App.--Fort
Worth 2001, pet. ref'd) (male on female misdemeanor assault constitutes crime of moral turpitude);
Lopez v. State, 990 S.W.2d 770, 778 (Tex. App.--Austin 1999, no pet.) (same). In addition,
burglary of a motor vehicle is a crime of deception. See LaHood v. State, 171 S.W.3d 613, 621 (Tex.
App.--Houston [14th Dist.] 2005, pet. ref'd) (burglary of non-habitation is crime of deception);
White v. State, 21 S.W.3d 642, 647 (Tex. App.--Waco 2000, pet. ref'd) (burglary of habitation
is crime of deception); see also Theus, 845 S.W.2d at 881 (recognizing impeachment value of
prior crimes involving deception). Thus, the trial court could have reasonably concluded that the
four complained-of convictions were probative of Johnson's credibility.

 Further, the baggie recovered from Johnson's wallet contained only trace amounts
of methamphetamine. Thus, the State had to prove, through evidence other than simply his
possession, that Johnson had knowledge that the substance in his possession was a controlled
substance. See King v. State, 895 S.W.2d 701, 703 (Tex. Crim. App. 1995). The trial court could
have reasonably concluded that the evidence of his prior convictions for possession of a controlled
substance demonstrated his familiarity with illegal controlled substances and therefore were also
probative to the issue of Johnson's knowledge.


State's Need for Evidence

 For the reasons discussed above, the trial court could have found that the State's need
for the evidence of Johnson's prior convictions was strong. Because Johnson testified, his credibility
was at issue. See Dale v. State, 90 S.W.3d 826, 829-30 (Tex. App.--San Antonio 2002, pet. ref'd)
(defendant who testifies at trial places credibility at issue and is subject to impeachment); see also
Alexander v. State, 740 S.W.2d 749, 763 (Tex. Crim. App. 1987). In addition, the State had to prove
Johnson's knowledge of the illegality of the substance in his possession. See Poindexter v. State,
153 S.W.3d 402, 405 (Tex. Crim. App. 2005). Consequently, the trial court could have reasonably
concluded that the evidence of Johnson's criminal history was necessary for the prosecution.


Unfair Prejudice

 "Unfair prejudice" refers to a tendency to suggest decision on an improper basis,
commonly, though not necessarily, an emotional one. Casey, 215 S.W.3d at 879 (citing
Gigliobianco, 210 S.W.3d at 641). Evidence might be unfairly prejudicial if, for example, it arouses
the jury's hostility or sympathy for one side without regard to the logical probative force of the
evidence. Id. at 880. The danger of unfair prejudice exists only when the evidence has the potential
to impress the jury in an irrational way. Martinez, 327 S.W.3d at 737 (citing Mechler, 153 S.W.3d
at 440-41).

 Although the evidence of Johnson's prior convictions may have a tendency to suggest
a verdict on an improper basis because of the inherently prejudicial nature of prior criminal conduct,
the same is true of all evidence of a defendant's previous convictions. Nevertheless, Rule
609 explicitly provides for impeachment with prior convictions for felonies and crimes of
moral turpitude. Moreover, in this case the trial court instructed the jury in the court's charge that
it could consider the evidence of Johnson's prior convictions only for the purpose of
impeaching his credibility. We presume that the jury obeyed these instructions. See Resendiz
v. State, 112 S.W.3d 541, 546 (Tex. Crim. App. 2003) (appellate courts presume jury follows trial
court's instructions). Nothing in the record suggests the jury disregarded the trial court's
instructions. The court did what it could to mitigate any potential improper influence of the
complained-of evidence.


Confusion of the Issues

 "Confusion of the issues" refers to a tendency to confuse or distract the jury from the
main issues in the case. Casey, 215 S.W.3d at 880. Here, the evidence of Johnson's prior
convictions was straightforward and directly relevant to several issues in the case, namely Johnson's
credibility and knowledge of the illegality of the substance in his possession. See Tex. R. Evid. 401
(evidence is relevant if it makes material fact more or less probable).


Misleading the Jury

 "Misleading the jury" refers to a tendency of an item of evidence to be given undue
weight by the jury on other than emotional grounds. Casey, 215 S.W.3d at 880. For example,
"'scientific' evidence might mislead a jury that is not properly equipped to judge the probative force
of the evidence." Gigliobianco, 210 S.W.3d at 641 (citation omitted). The complained-of evidence
of Johnson's previous convictions was not prone to this tendency, as it concerned matters easily
comprehensible by laypeople.


Undue Delay or Needless Presentation of Cumulative Evidence

 "Undue delay" and "needless presentation of cumulative evidence" concern the efficiency
of the trial proceeding rather than the threat of an inaccurate decision. Casey, 215 S.W.3d at 880. 
The entirety of the evidence of Johnson's criminal history, including the complained-of previous
convictions, was presented in a relatively brief amount of time when the prosecutor cross-examined
Johnson. The exchange consisted of seven questions, only four of which related to the
complained-of convictions, and the entirety of this exchange occupies only one page of
approximately 172 pages of trial testimony during the guilt-innocence phase. See, e.g., Lane v. State,
933 S.W.2d 504, 520 (Tex. Crim. App. 1996) (factor weighed in favor of admission where
extraneous-offense testimony amounted to "less than one-fifth" of trial testimony). Moreover, the
evidence was not repetitive but was unlike any other evidence presented. (5)

The Rule 403 Factors

 Considering all the 403 factors, we cannot conclude that the probative value of the
evidence of the complained-of prior convictions was substantially outweighed by the potential for
unfair prejudice. See Garcia v. State, 201 S.W.3d 695, 704 (Tex. Crim. App. 2006) ("[W]hen
determining whether evidence is admissible under Rule 403, we do not consider just whether the
evidence is more prejudicial than probative, we consider whether the probative value is substantially
outweighed by the danger of unfair prejudice."). In light of the State's burden of proof and the
matters placed in issue by the defense, we cannot say that the trial court abused its discretion in
admitting the complained-of evidence of Johnson's criminal history at trial. We overrule his first
point of error.


Jury Argument

 In his sixth and seventh points of error, Johnson complains about the State's jury
argument. Specifically, in his sixth point of error he maintains that the following three statements
made by the prosecutor were improper jury argument:


 1. "He is a thief. He is a burglar. He is a drug abuser and he is a person who
beats up his family."

 

 2. "People take intoxilyzer tests in DWIs all the time, and they're over
the limit."

 

 3. "He's the one who took his nasty meth, snorted it in the bathroom and went
back to the game with children and families."


To preserve error regarding improper jury argument for appellate review, a defendant must object
and pursue his objection to an adverse ruling. See Estrada v. State, 313 S.W.3d 274, 303 (Tex.
Crim. App. 2010), cert. denied, 131 S.Ct. 905 (2011); Tex. R. App. P. 33.1(a). A defendant must
contemporaneously object to the statement, request an instruction that the jury disregard the
statement if the objection is sustained, and move for a mistrial if an instruction to disregard is given. 
Cook v. State, 858 S.W.2d 467, 473 (Tex. Crim. App. 1993). A defendant's failure to object to a
jury argument, or failure to pursue an adverse ruling to his objection to the jury argument, forfeits
his right to complain about the jury argument on appeal. Cockrell v. State, 933 S.W.2d 73, 89 (Tex.
Crim. App. 1996). Even if the jury argument error was such that it could not be cured
by an instruction, a defendant is still required to object and request a mistrial. Mathis v. State,
67 S.W.3d 918, 926-27 (Tex. Crim. App. 2002).

 During final jury argument, Johnson objected to the State's argument describing him
as a thief, burglar, drug abuser, and person who beats up his family. The trial court sustained the
objection. Johnson did not request a jury instruction or move for a mistrial. Thus, Johnson has no
adverse ruling about which to complain. He has failed to preserve any alleged error relating to this
statement. Further, Johnson failed to object entirely to either of the other two statements he
complains of in his sixth point of error. Accordingly, he has also failed to preserve error in
connection with these statements.

 In his seventh point of error, Johnson asserts that the prosecutor impermissibly
attacked his credibility, improperly bolstered the State's witness, and improperly expressed his
personal opinion that Johnson was a liar. However, Johnson failed to raise these objections to
the trial court at the time of the prosecutor's argument. Therefore, he failed to preserve error as to
these complaints.

 Johnson concedes his failure to object to improper jury argument at trial, but asserts
that the alleged errors in jury argument constitute fundamental error. Again, however, Johnson fails
to cite any authority, and we have found none, characterizing the State's alleged improper jury
argument as systemic, waivable-only, or otherwise "fundamental" error. On the contrary, the court
of criminal appeals has repeatedly emphasized that a defendant must object to preserve a complaint
that the State's jury argument was improper. See Mays v. State, 318 S.W.3d 368, 394 (Tex. Crim.
App. 2010), cert. denied, 131 S.Ct. 1606 (2011) (because appellant failed to object to propriety of
prosecutor's jury arguments at trial, he failed to preserve any issue for appeal); Threadgill v. State,
146 S.W.3d 654, 670 (Tex. Crim. App. 2004) (because appellant failed to object to jury argument
at trial, he forfeited right to raise issue on appeal); Mathis, 67 S.W.3d at 926-27 (reaffirming rule that
even if jury argument error could not be cured by instruction, defendant is still required to object and
request mistrial). Accordingly, because Johnson failed to object at trial or pursue his objection to
an adverse ruling, he forfeited his right to complain about improper jury argument on appeal. We
overrule his sixth and seventh points of error.


Sufficiency of the Evidence

 In three points of error, Johnson challenges the sufficiency of the evidence to support
the jury's guilty verdict. In his fourth and fifth points of error, he argues the evidence is legally and
factually insufficient to support his conviction for possession of a controlled substance. We no
longer employ distinct legal and factual sufficiency standards when reviewing the sufficiency of the
evidence to sustain a criminal conviction. See Brooks v. State, 323 S.W.3d 893, 912 (Tex. Crim.
App. 2010). Instead, the only standard for determining whether the evidence proves the defendant's
guilt beyond a reasonable doubt is the Jackson due-process standard. Brooks, 323 S.W.3d at 912;
see Griego v. State, 337 S.W.3d 902 (Tex. Crim. App. 2011). In his third point of error, Johnson
complains about the trial court's denial of his motion for instructed verdict. A challenge to a trial
court's ruling on a motion for directed verdict constitutes a challenge to the sufficiency of the
evidence to support the conviction. Williams v. State, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996). 
Accordingly, we address all three of these points of error concerning sufficiency of the evidence
together, applying the same standard of review.

 Due process requires that the State prove, beyond a reasonable doubt, every element
of the crime charged. Jackson v. Virginia, 443 U.S. 307, 313 (1979); Byrd v. State, 336 S.W.3d 242,
246 (Tex. Crim. App. 2011). When reviewing the sufficiency of the evidence to support a
conviction, we consider all of the evidence in the light most favorable to the verdict to determine
whether any rational trier of fact could have found the essential elements of the offense beyond a
reasonable doubt. Jackson, 443 U.S. at 319; Brooks, 323 S.W.3d at 899. The sufficiency of the
evidence is measured by reference to the elements of the offense as defined by a hypothetically
correct jury charge for the case. Villarreal v. State, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009).

 In determining the legal sufficiency of the evidence, we must consider all the evidence
in the record, whether direct or circumstantial, properly or improperly admitted, or submitted by the
prosecution or the defense. See Clayton v. State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); Moff
v. State, 131 S.W.3d 485, 489-90 (Tex. Crim. App. 2004); Allen v. State, 249 S.W.3d 680, 688-89
(Tex. App.--Austin 2008, no pet.). We review all the evidence in the light most favorable to the
verdict and assume that the trier of fact resolved conflicts in the testimony, weighed the evidence,
and drew reasonable inferences in a manner that supports the verdict. Jackson, 443 U.S. at 318; see
Laster v. State, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). A legal-sufficiency review requires
us to defer to the jury's determinations of the witnesses' credibility and the weight to be given their
testimony. Brooks, 323 S.W.3d at 899. The jury, as exclusive judge of the facts, is entitled to
weigh and resolve conflicts in the evidence and draw reasonable inferences therefrom. Clayton,
235 S.W.3d at 778; see Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979). Thus, when faced with
a record of historical facts that supports conflicting inferences, we must presume that the trier of fact
resolved any such conflicts in favor of the verdict and defer to that resolution. Jackson, 443 U.S. at
326; Padilla v. State, 326 S.W.3d 195, 200 (Tex. Crim. App. 2010). We consider only whether the
jury reached a rational decision. See Curry v. State, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

 The standard of review on appeal is the same for both direct and circumstantial
evidence cases. Kuciemba v. State, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010). Circumstantial
evidence is as probative as direct evidence in establishing guilt and may alone be sufficient to
establish guilt. Hooper v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Every fact does not need
to point directly and independently to the guilt of the appellant, as long as the cumulative force of
all the incriminating circumstances is sufficient to support the conviction. Id. So long as "the
verdict is supported by a reasonable inference, it is within the province of the factfinder to choose
which inference is most reasonable." Laster, 275 S.W.3d at 523. As with any question of
circumstantial evidence and inference, "the jurors are free to use their common sense and apply
common knowledge, observation, and experience gained in the ordinary affairs of life when
giving effect to the inferences that may reasonably be drawn from the evidence." Obigbo v. State,
6 S.W.3d 299, 306 (Tex. App.--Dallas 1999, no pet.); see Saenz v. State, 976 S.W.2d 314, 322 (Tex.
App.--Corpus Christi 1998, no pet.) ("Jurors are expected to draw upon their own experiences and
common knowledge and apply them to the facts at hand."). In assessing the legal sufficiency of the
evidence, we have a duty to ensure that the evidence presented actually supports a conclusion that
the defendant committed the crime that was charged. Williams v. State, 235 S.W.3d 742, 750 (Tex.
Crim. App. 2007).

 To support a conviction for possession of a controlled substance, the State must
prove, first, that the defendant exercised care, custody, control, or management over the substance
and, second, that he knew the matter possessed was contraband. Evans v. State, 202 S.W.3d 158,
161 (Tex. Crim. App. 2006); see Tex. Health & Safety Code Ann. § 481.115(a). When the quantity
of a substance possessed is so small that it cannot be measured, the State must prove--through
evidence other than mere possession--that the defendant knew that the substance in his possession
was a controlled substance. King, 895 S.W.2d at 703; Shults v. State, 575 S.W.2d 29, 30 (Tex. Crim.
App. 1979).

 In this case, the record reflects that law enforcement officers recovered a baggie
containing trace amounts of methamphetamine from Johnson's wallet. Clearly, a rational jury could
conclude that Johnson exercised care, custody, control, or management over the baggie containing
the controlled substance, as it was in his wallet, which was in the pocket of his pants. Moreover,
Johnson confessed ownership of the baggie containing the methamphetamine stating, "I'm not
denying it. It was mine. It was mine. Heck, yeah, it's mine."

 The record also contains evidence, apart from his possession, demonstrating
that Johnson knowingly possessed this baggie of methamphetamine. Two officers, one a
drug-recognition expert, observed Johnson exhibit behaviors consistent with being under the
influence of a CNS stimulant, such as methamphetamine. One of the officers followed him into
the bathroom, where he heard Johnson make noises consistent with someone snorting
methamphetamine. In addition, Johnson admitted to the officers during the search of his person that
he had methamphetamine in his wallet, but it was gone. The evidence also showed that the baggie
recovered from Johnson's wallet was commonly used for carrying methamphetamine. Further, while
the baggie contained only trace amounts of methamphetamine, it was enough to be visible. Both
officers saw residue amounts of the controlled substance in the baggie. Finally, Johnson admitted
during his testimony at trial that he knowingly possessed methamphetamine.

 We construe the evidence in the light most favorable to the verdict. From the
evidence produced at trial, a rational jury could have inferred that Johnson knowingly carried
methamphetamine in the baggie in his wallet and that the residue in the baggie was what remained
after Johnson snorted the bulk of the methamphetamine in the bathroom during the game. A
fact finder may support its verdict with reasonable inferences drawn from the evidence. Laster,
275 S.W.3d at 523; Hooper, 214 S.W.3d at 14. It is up to the factfinder to decide which inference
is most reasonable. Id. We find that the evidence is sufficient to support Johnson's conviction for
possession of less than one gram of methamphetamine. Thus, the trial court did not err in denying
Johnson's motion for directed verdict. We overrule his third, fourth, and fifth points of error.


Cruel and Unusual Punishment

 In his eighth point of error, Johnson claims that his sentence was grossly
disproportionate to the offense underlying the conviction, resulting in cruel and unusual punishment
in violation of the United States Constitution.

 The Eighth Amendment to the U.S. Constitution, prohibiting cruel and unusual
punishment, forbids extreme sentences that are "grossly disproportionate" to the crime. See Graham
v. Florida, 130 S.Ct. 2011, 2021 (2010); U.S. Const. amend. VIII. However, to preserve a complaint
that a sentence is grossly disproportionate, constituting cruel and unusual punishment, a defendant
must make a timely, specific objection to the trial court or raise the issue in a motion for new trial. 
See Battle v. State, 348 S.W.3d 29, 30-31 (Tex. App.--Houston [14th Dist.] 2011, no pet.) (appellant
waived complaint that imprisonment for life without parole for capital murder was "grossly
disproportionate" punishment under Eighth Amendment because he failed to raise complaint to trial
court); Kim v. State, 283 S.W.3d 473, 475 (Tex. App.--Fort Worth 2009, pet. ref'd) (appellant
waived argument that seven-year sentence for burglary of habitation was cruel and unusual
punishment because appellant failed to raise issue to trial court); Noland v. State, 264 S.W.3d 144,
151-52 (Tex. App.--Houston [1st Dist.] 2007, pet. ref'd) (failure to raise issue of gross
disproportionality in punishment of 55 years' confinement and $10,000 fine for murder in objection
at trial or motion for new trial waived right to raise issue on appeal); see also Tex. R. App.
P. 33.1(a).

 Johnson was required to make a timely objection to the trial court to preserve his
complaint that his seven-and-one-half-year sentence is grossly disproportionate to the possession of
a controlled substance offense. However, he did not object when the trial court imposed the
sentence, nor did he complain of the sentence in any post-trial motion. Therefore, Johnson has failed
to preserve this complaint for our review. We overrule his eighth point of error.


CONCLUSION

 For the foregoing reasons, we affirm the judgment of the trial court.


 __________________________________________

 J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Henson and Goodwin

Affirmed

Filed: May 4, 2012

Do Not Publish
1. In his brief, Johnson raises ten points of error. Johnson initially filed a notice of appeal
and, after the trial court denied his motion for an appeal bond, an amended notice of appeal. The
parties submitted combined briefs on all the points of error raised, including the trial court's denial
of an appeal bond. However, an article 44.04 appeal is separate from the appeal of the conviction
and punishment, and therefore must be perfected by a separate notice of appeal. See Tex. Code
Crim. Proc. Ann. art. 44.04(g) (West 2006); Ortiz v. State, 299 S.W.3d 930, 932 (Tex.
App.--Amarillo 2009, no pet.). We construed Johnson's amended notice of appeal as a separate
notice of appeal from the trial court's order denying the appeal bond. We separated the appeal from
the order denying an appeal bond from the appeal from the judgment of conviction, but we did not
require the parties to redraw their briefs to separate the points of error. See Johnson v. State,
No. 03-10-00770-CR, 2012 WL 378091 (Tex. App.--Austin Feb. 1, 2012, order). Johnson's appeal
of the denial of his appeal bond appears in Johnson v. State, No. 03-10-00770-CR, 2012 WL 432152
(Tex. App.--Austin Feb. 8, 2012, no pet.) (mem. op.) (not designated for publication).
2. Johnson relies upon Brumit v. State for his contention that the requirement of a fair and
impartial jury is an absolute requirement. However, Johnson's reliance upon Brumit is misplaced. 
In Brumit, the court of criminal appeals merely recognized that due process requires a neutral and
detached hearing body or officer. Brumit v. State, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006). 
The court actually declined to address the preservation issue under Marin v. State, 851 S.W.2d 275
(Tex. Crim. App. 1993). Id. at 644-45.
3. The State also offered evidence of Johnson's 2008 state jail felony conviction for theft of
a person and his 2006 misdemeanor conviction for theft. No objection was made to the State's
impeachment of Johnson with these prior convictions.
4. Rule 609 states that evidence of a prior conviction shall be admitted for impeachment
purposes if its probative value outweighs its prejudicial effect. Tex. R. Evid. 609. Theus v. State
is the interpretive case for Rule 609, instructing when prior convictions are admissible for
impeachment purposes under that rule. See Theus v. State, 845 S.W.2d 874, 879-81 (Tex. Crim.
App. 1992). In Theus, the court of criminal appeals articulated a non-exclusive list of five factors
for courts to consider in determining whether a prior conviction's probative value outweighs its
prejudicial effect for purposes of Rule 609. See id. at 880-81. These are the factors guiding the trial
court's probative versus prejudice balancing test under Rule 609. In this case, however, Johnson's
failure to object under Rule 609 waived error as to any violation of Rule 609. Thus, the
corresponding Theus factors--guiding the balancing test under Rule 609--are not applicable. 
Consequently, we conduct our review only of the trial court's ruling on the Rule 403 objection based
on the factors the trial court must consider under a Rule 403 balancing test.
5. Johnson contends that this evidence was unnecessarily cumulative because the State could
have impeached him with only his two previous theft convictions. However, Rule 609 places no
restriction on the number of previous convictions that may be used to impeach a witness's
credibility. Arguably, the number of previous convictions corresponds to the level of impeachment
of the witness's credibility--the more previous convictions, the greater the impeachment.